The Chattahoochee National Bank *vs.* Schley, guardian.

THE CHATTAHOOCHEE NATIONAL BANK, plaintiff in error, *vs.* ELIZA SCHLEY, guardian, defendant in error.

1. By habitually receiving, through its cashier, special deposits to be kept gratuitously for mere accommodation, a national bank will incur liability for gross negligence in respect to any such deposits, received in the usual way.

2. The bank is not bound to restore or answer for a special deposit which has been withdrawn by a person having authority from the depositor to withdraw and use the same, though in suffering the withdrawal the corporation, or its officer, acted without any knowledge that the authority existed, or had been conferred.

3. Where a special deposit consists of stocks and bonds, written authority, indorsed on the certificate of deposit, to pay out the dividends and coupons, is no authority for surrendering the stocks and bonds themselves.

4. It is not appropriate to charge the jury that they are to determine what is in evidence, or that it is for them to settle what is in evidence. There is danger that this language would induce the jury to deal with the competency of testimony, instead of confining themselves to its credibility and effect.

Banks. Bailments. Principal and Agent. Powers. Charge of Court. Before HENRY W. HILLIARD, Esq., Judge *pro hac vice.* Muscogee Superior Court. May Term, 1876.

Eliza Schley, as guardian, brought trover against the Chattahoochee National Bank, to recover the value of four bonds of the Mobile and Girard Railroad Company, and two bonds of the city of Macon. The defendant pleaded the general issue. The evidence for the plaintiff presented the following facts:

The plaintiff, as guardian for her children, held and owned the bonds. They were worth eighty or ninety cents on the dollar. E. Barnard & Co. had been her friends for many years, and L. R. Hoops was one of the firm. On the 10th of May, 1873, she was in Columbus and consulted with E. Barnard & Co. as to the most safe and convenient place to keep the bonds. There were *coupons* and *dividends* to become due every few months. She was trading with E. Barnard & Co., and wanted them to collect the *coupons* and *dividends* as they became due, and place the same to her credit on their books. Hoops took the bonds to the bank for safe keeping, and delivered them to R. M. Mulford, *assistant cashier.* Plaintiff was not present, and Hoops wanted a receipt for the bonds. Mulford, at first, declined to give a receipt, saying that the bank would not be responsible for such packages; but, finally, at the request of Hoops, gave a memorandum, in form of receipt, to show the number and amount of the bonds. Hoops took the receipt back to Mrs. Schley, and, at his request, she indorsed on it that E. Barnard & Co., or L. R. Hoops, had authority to collect the *dividends* and *coupons*, and the receipt, with the indorsement thereon, was left with Hoops.

Hoops occasionally called at the bank afterwards, received the package from Mulford and collected the *coupons*, and returned the package to the bank. Plaintiff occasionally called on Barnard & Co. to see that the *coupons*, so collected, were entered to her credit on the books; but she never went to the bank, nor saw any of the officers thereof.

Sometime in 1874, Hoops called in the usual way and received the package from Mulford, and never returned it again. He sold, or *hypothecated*, the bonds to raise money

in his business.   He testifies that plaintiff gave him authority to so use the bonds.   Plaintiff denies this, but says that he asked permission to use them for a while, but she did not give him leave.

The bonds had been demanded of the bank, and it had refused to deliver them.

The bank had occasionally accommodated its friends by allowing them to place valuables in its vaults for safe keeping.

On the part of the defendant, the proof was, in substance, as follows:

The bank was organized under the law of congress authorizing the establishment of national banks.   It had a president, cashier, and assistant cashier—R. M. Mulford was assistant cashier.

When Hoops brought the package containing the bonds to the bank, Mulford received the same from Hoops as the friend and agent of Mrs. Schley, and, at first, refused to give any receipt for it, saying that the bank would not become responsible for them; but, upon the representation of Hoops, that he wanted a memorandum, in case of accident, to show the amount and numbers of the bonds, he did give him a memorandum, in form of receipt, with description of bonds, numbers, and amounts, in the words following:

" CHATTAHOOCHEE NATIONAL BANK,
COLUMBUS, GA., 10th May, 1873.
" Received of Mrs. Eliza Schley, guardian, on special deposit:
Bond   78—Mobile and Girard Railroad................$1,000
Bond   77—Mobile and Girard Railroad................ 1,000
Bond 107—Mobile and Girard Railroad................ 1,000
Bond 108—Mobile and Girard Railroad................ 1,000
Certificate 433—Eagle and Phœnix Manufacturing Co.,
       for fifteen shares.
Bond    8—City of Macon.............................    500
Bond 339—City of Macon.............................    500
" R. M. MULFORD, Cashier."

Indorsed as follows:

" Will pay above *dividends* and *coupons* to E. Barnard & Co., or L. E. Hoops.                       MRS. ELIZA SCHLEY, Guardian."

No officer of the bank, except Mulford, ever knew that

the bonds were on deposit. Hoops called occasionally and took the package out for the purpose of collecting the *coupons;* and, finally, he received the package in the usual way, and never returned it to the bank.

Some time afterwards Hoops became embarrassed and failed in business.

Hoops testified that plaintiff gave him authority to use the bonds, as *collaterals*, to raise money; that this was about the time he finally took the bonds out of the bank; and, in pursuance of such authority, he did use the bonds. That afterwards, and after his failure, he did do all he could to secure Mrs. Schley, and gave her a mortgage on his goods; that Mrs. Schley wrote him a letter, and, among other things, admitted that she had given him authority, " only by word of mouth," to use the bonds.

Plaintiff called to see the officers of the bank about the matter, and had a conversation with Epping, the president, and Edwards, the cashier, and they both testified that, in that conversation, she admitted that she did give Hoops authority to use the bonds.

The officers of the bank testified that there was no rule, law, or by-law of the bank, authorizing the deposit of valuables for safe-keeping; but that they had allowed friends to place in their bank-vault valuable packages, but without any idea that the corporation would thereby be made liable.

The jury found for the plaintiff $4,314.77. The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in the following charge: " It is proper for the court to say, that if Mr. Hoops had authority from Mrs. Schley to withdraw the bonds from the bank for any purpose, for a longer or shorter time, and that *upon that authority being made known to the bank*, the bonds were delivered to him, and he used them in his own business, then the bank is not responsible for any improper use of the bonds after they were so delivered to him by the bank. The authority given to Mr. Hoops by Mrs. Schley

would relieve the bank of all responsibility. It would be dealing hardly with the bank, to hold it responsible for an improper use of the bonds after they were delivered to Mr. Hoops upon authority given by Mrs. Schley."

2d. Because the court erred in the following charge: "If it be in evidence that the bank does receive special deposits in the course of its business; that it has, at this time, packages delivered to its charge as special deposits; and that the package in question, covering the bonds sued for, was delivered to the bank as a special deposit, then you are instructed by the court, that the bank is responsible for the restitution of the bonds under certain rules of law which will now be laid down for your guidance."

3d. Because the court erred in the following charge: "If a box of gold-coin, or a package of money sealed, or an envelope containing bonds, be delivered to the bank as a special deposit, and the officer taking charge of said deposit should put them in the vault of the bank, with its own property of a similar description, in the event of the loss of the deposit, the bank is liable only for gross negligence, but it is liable for that."

4th. Because the court erred in the following charge: "You are instructed that if a bank does receive special deposits when delivered to one of its officers in the scope of his appropriate duties, the bank becomes liable for the safe keeping of the deposit, and for its restitution when demanded by the depositor, under the rules of law already stated. Officers of a bank, exercising the functions to which they are appointed, are placed where the public is invited to deal with them, and the institution is bound by their acts, unless they transcend the limits of their authority. Rules and regulations, known only to those who control the bank, and not made public, cannot affect the rights of those who deal with them."

5th. Because the court erred in refusing to charge as follows: "The defendant is a corporation, chartered by congress, and the legitimate business of the bank is prescribed

by the charter; and by the charter of the bank, it is not within the scope of its authority to receive for safe-keeping, goods, chattels, or valuables, on special deposit. Under the charter, the cashier of this bank had no authority to bind the corporation by receiving on deposit the bonds mentioned, unless the plaintiff has proven that authority had been given by the directors or officers of the bank."

6th. Because the court erred in failing to charge, that the direction given the cashier by plaintiff, gave authority to Hoops to have the custody of the bonds; but, on the contrary, charged that it was for the jury to determine what was in evidence.

7th. Because the court erred in charging as follows: "It is now for you, gentlemen, to settle what is in evidence, and to draw your own conclusions, under the principles of law made known to you by the court, as to the rights of the respective parties."

The motion was overruled, and the defendant excepted.

JOHNSON & INGRAM; R. J. MOSES, for plaintiff in error.

THORNTON & GRIMES, for defendant.

BLECKLEY, Judge.

1. A national bank that habitually receives special deposits for safe-keeping, as matter of accommodation, is bound by the act of its cashier in receiving, on special deposit, a package of stocks and bonds. The bank, though acting without reward, becomes a bailee, and is responsible for gross negligence. 62 Penn. State, 47; Code, §§ 2104, 2105. Compare 47 Vt., 546; 60 New York, 278; 42 Md., 581; 17 Mass., 479.

2. If a person withdraw from a bank a special deposit, in pursuance of authority conferred upon him by the depositor, the bank is discharged, though the authority be unknown, at the time, to the corporation or to the officer representing it in the transaction.

3. Written authority, signed by the depositor, on the certificate of deposit, in these terms: "Will pay above dividends or coupons to (naming a particular person) for my account," will not justify the bank in parting with possession of the bonds themselves and the certificates of stock described in the certificate of deposit, though possession be yielded to the person thus named.

4. In charging the jury, it is not appropriate to say to them, that they are to determine what is in evidence, or that it is for them to settle what is in evidence. Phraseology like this might mislead, by inducing them to suppose that they were to consider the *competency* of the testimony, as well as its credibility and effect.

Judgment reversed.