THOMAS E. PATTISON, Respondent, *v.* THE SYRACUSE NATIONAL BANK, Appellant.

The power to receive special deposits is incidental to the business of banking.

The enumeration of banking powers in the national banking act is not significant of an intention to place any special restrictions upon national banks as distinguished from State banks. The enumeration is of the general, not the incidental powers.

National banks, therefore, have power to receive special deposits gratuitously or otherwise; and when received gratuitously, they are liable for their loss by gross negligence.

When a national bank has habitually received such deposits, this liability attaches to a deposit received in the usual way.

The term "special deposits" includes money, securities and other valuables delivered to banks, to be specifically kept and re-delivered; it is not confined to securities held by the banks as collateral to loans.

In an action to recover damages for a special deposit alleged to have been lost through defendant's gross negligence, it appeared that plaintiff delivered to defendant's teller, at its bank, for safe-keeping, a package containing certain bonds. Defendant had been accustomed to receive for that purpose, packages supposed to contain securities and valuables. Some of these were left by its directors. The cashier of the bank had the control and management of its affairs. It did not appear that the president took any part in its management, or that the directors held any meetings. The teller sometimes acted as cashier in his absence. Some time before the deposit, the cashier said something to the teller as to their not taking any more packages for safe-keeping. The teller testified

that this was not a positive instruction, but merely an opinion, and that he did, after that, receive packages. He also testified that he told plaintiff when the deposit was made, that it would be at his own risk; this was contradicted by plaintiff. The teller also testified that the cashier sometimes told persons depositing packages that they would be at their own risk, and at other occasions packages were received without such notice. The package so left by plaintiff was kept in defendant's bank for about two years before its loss, being occasionally taken out by him to cut off coupons, and then returned. *Held,* that the evidence justified the submission to the jury of the question of the authority of the teller, and whether the deposit was with the bank; and, this having been found, that defendant was bound to return the bonds when demanded, or to show some sufficient ground for not doing so.

There was no direct explanation of the manner of the loss, but the evidence tended to show that the bonds were stolen in the day time, when the bank was open. They were kept in a safe, so placed as to be accessible to any person entering the bank from the street, while those in the bank were so placed that at times the safe was not in their view, and sometimes the door of the safe was left open. *Held,* that the evidence authorized a finding, that the bonds were stolen by some one coming in from the street; and that leaving the property thus exposed was gross negligence.

Also, *held,* that the fact that property of the bank was stolen from the same place, at the same time, was not conclusive against the charge of gross negligence.

As to whether, assuming the receipt of special deposits to have been beyond the legal power conferred upon defendant, yet having in fact received plaintiff's property into its custody, it could set up its own want of corporate power as a defense, *quære.*

*Lloyd* v. *W. B. Bank* (15 Penn St., 172), distinguished; *F. N. Bank* v. *O. N. Bank* (60 N. Y., 278), distinguished and limited; *Wiley* v. *F. N. Bank* (47 Vt., 546; 50 id., 389), disapproved.

The authorities upon the subject of the liability of banks for special deposits collated.

(Argued January 15, 1880; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial. (Reported below, 17 Hun, 419.)

This action was brought to recover the value of certain negotiable railroad bonds, alleged to have been deposited, for safe keeping, by plaintiff with defendant, a banking corpora-

tion organized under the national banking act, and which defendant refused to deliver up on demand.

The answer denied that the bonds were deposited with defendant, but alleged that they were left with one of its clerks, who, without consideration and without defendant's knowledge, placed them in its vault ; that the same, together with a large amount of defendant's property, were stolen from said vault by some person who had feloniously entered defendant's bank.

The facts are sufficiently set forth in the opinion.

*Samuel Hand*, for appellant.   Defendant is not liable, as it had no authority under its charter to transact the business of receiving deposits of specific articles gratuitously.   (Brice on Ultra Vires, 24, 34; *Beaty* v. *Knowles*, 4 Pet., 152, 168; *Pearce* v. *Madison, etc., R. R. Co.*, 21 How., 440; *The People* v. *The Utica Ins. Co.*, 15 J. R., 358, 383; *Halstead* v. *Mayor of N. Y.*, 3 Cow., 430; *Hood* v. *N. Y. and N. H. R. R. Co.*, 22 Conn. 1, 502; *Crocker* v. *Whitney*, 71 N. Y., 161, 166; *Dartmouth College* v. *Woodward*, 518, 542; *Chicago Building Society*, 65 Ill., 458; *De Graff* v. *Ames Lin. Thread Co.*, 21 N. Y., 127, 128; *Parish* v. *Wheeler*, 22 id., 503; *Bessell* v. *M. S. and N. I. R. R. Co.*, 22 id., 288; 12 Statutes at Large, 665; *First National Bank of Clyde* v. *The Ocean National Bank*, 60 N. Y., 278; S. C., National Banking Cases, 728; *Wiley* v. *Bank of Brattleboro*, 47 Verm., 546; S. C., Thompson National Banking Cases, 905; *Whiting* v. *Same Bank*, 15 Penn., 172; *Foster* v. *The Essex Bank*, 17 Mass., 479; 2 R. S. [6th ed.], 844, § 199; *Curtiss* v. *Levitt*, 15 N. Y., 9, 52; *Chapman* v. *White*, 6 N. Y., 407, 412; 2 Revised Statutes [6th ed.], 391; 2 R. S., 1008; *Third National Bank of Baltimore* v. *Boyd*, 44 Md., 47; S. C., Banking Cases, 545; *Wiley* v. *National Bank of Brattleboro*, 47 Verm., 546; S. C., Banking Cases, 905; *Hartford and New Haven Railroad Co.* v. *Croswell*, 5 Hill. 361; *Stevens* v. *Rutland and Burlington Railroad Co.*, 29 Vt., 545; *Head & Amory* v. *The Providence Co.*, 2 Cranch,

127; *First National Bank of Lyons* v. *The Ocean National Bank*, 60 N. Y., 278; Thompson National Banking Cases, 728; *Wiley* v. *The Bank of Brattleboro*, 47 Verm., 546; National Banking Cases, 905; 14 American Law Register [N. S.], 348; *Whiting* v. *The Same Bank*, 50 Vt., 389; Albany Law Journal [December 14, 1878], 471; *Lloyd* v. *West Branch Bank*, 15 Penn., 172; Albany Law Journal [September 13, 1879], 215; *Weekler* v. *The First National Bank of Hagerstown*, 42 Md., 581; National Banking Cases, 533, 545, 638, 637, 650, 878; Bankers' Magazine [December, 1867], 453; *Bullard* v. *Bank*, 18 Wal., 589; Alb. Law Jour. [Sept. 13, 1879], 215; *Foley* v. *Hill*, 2 House of Lords' Cases, 44; 2 American Cyclopædia, 542; Eng. Cyclopædia of Arts and Sciences, 825; 3 Encyclopædia Britanica, 339.) This being a gratuitous bailment, defendant would be liable only for gross negligence. (Story on Bailment, § 94; Jones on Bailment, 8, 49, 118; *Tompkins* v. *Saltmarsh*, 14 Serg. & R., 275; Story on Bailment, § 65, and notes; Dig. Lib., 16, tit. 3, chap. 32; Justinian Institutes Lib., § 25; Pothier's Pandests Lib., 16, tit. 3, § 25; 1 Doma's B., 1, tit. 7, § 3, art. 2 and 3; Edwards on Bailment, 70, 71; Jones on Bailment, 8, 10, 46, 119; Addison on Contracts, 524; Kent's Com., 560 and 562, and notes; *Coggs* v. *Bernard*, 2 Lord Raymond, 909, 914; *Shultz* v. *Blackburn*, 2 H. Black., 158; *Foster* v. *Essex Bank of Westfield*, 17 Mass., 749; *Whitney* v. *Lee*, 8 Metc., 91; *Smith* v. *National Bank of Westfield*, 99 Mass., 611; *Tompkins* v. *Saltmarsh*, 14 S. & R., 275; *Lloyd* v. *The West Branch Bank*, 15 Penn., 172; *Scott* v. *National Bank, Chester Valley*, 72 id., 471; *Smith* v. *Lancaster National Bank*, 62 id., given to wrong party; *Laforge* v. *Martin*, 11 La. An. R., 462; *Mechanics and Traders' Bank* v. *Gordon*, 5 La., 604; *Anderson* v. *Foreman*, Wright's, Ohio, 595; 18 Ga., 475, 513; *Stanton* v. *Bell*, 2 Hawks, 195; *McKay* v. *Hamblin*, 46 Miss., 472; *Spooner* v. *Mattison*, 46 Vt., 300; *Geblin* v. *McMillen*, 5 Moore [N. S.], P. C., 435.) If it took the same care of the deposit which it took of its own valuables it cannot be made liable. (5 La. An.

R., 604; Inst. of Justinian Lib., 3, tit. 15, § 3; Pandects Lib., 16, tit. 3, chap. 20, 32; Pothier Traits du dep., n. 23, 24; Domat's Lib., 1, tit. 7, § 3, notes 2 and 3; Bracton's Lib., 3 Cass., 2, § 1; Jones on Bailment, 22, 23, 31, 32, 46, 47; Kent's Com., vol 2, pp. 560, 562, 563; Edwards on Bailment, 68, 69, 71; Story on Bailments, § 63; 2 Kent's Com., 562, and note.)   The proof showed a delivery of the bonds to the teller with no proof of any authority in the teller to take them, plaintiff was bound to show that the teller had authority to · receive them.   (*The Lyons National Bank* v. *Ocean National Bank*, 60 N. Y., 278; *Foster* v. *The Essex Bank*, 17 Mass., 479.)   The *onus* was not on the defendant to excuse the loss.   (*Smith* v. *The National Bank of West-field*, 99 Mass., 605; *Pitlock* v. *Wells, Fargo & Co.*, 109 Mass., 452; *Geblin* v. *McMillin*, 5 Moore [N. S.], P. C., 435; *Stewart* v. *Stimpson*, 1 Wend., 379.)   If the robbery was committed by an employee, the bank would not be responsible.   (*Smith* v. *The National Bank of Westfield*, 99 Mass., 611; *Knowles* v. *At. and St. L. R. R. Co.*, 38 Me., 55; *Darsey* v. *Richardson*, 3 Ellis & Bl., 144.)

*Geo. F. Comstock*, for respondent.   With respect to the power in question, there is no distinction between National and other banks.   (Act of Congress of 1864, chap. 106, p. 100; Session Laws of 1782, chap. 34; Session Laws of 1803, chap. 42; Session Laws of 1825, pp. 198, 204.)   All banks have the power of receiving special deposits as one of their direct powers, and not as the mere incident of other powers.   (Story on Bailments, " Deposition ; " Webster's Dict., " Deposit ; " *Marine Bank* v. *Fulton Bank*, 2 Wal., 252, 256; 1 Encyclopædia Americana, " Bank," 543; 1 English Encyclopædia of Arts and Sciences, 833, 837, 841; 1 U. S. Stat. at Large, 191; *Foster* v. *Essex Bank*, 17 Mass.; *First Nat. Bank of Carlysle* v. *Graham*, 85 Penn. St., 91; *Van Leuwen* v. *First Nat. Bank of Kingston*, 54 N. Y., 671; *Yorkes* v. *First Nat. Bank of Port Jervis*, 69 id., 381; 61 Me., 369.)   The deposit was with the bank and not with its

teller as an individual. (*Merchants' Bank* v. *State Bank*, 10 Wall., 604; 16 N. Y., 133; Story on Agency, § 114; *Griswold* v. *Haven*, 25 N. Y., 594; *Van Leuven* v. *First Nat. Bank*, 54 id., 671; 17 Mass., 479; 85. Penn. St., 91.) Defendant was guilty of gross negligence. (4 Ad. & El., 876; Story on Bailments, §§ 15, 22, 24, 64, 67; *Tracy* v. *Wood*, 3 Mason, 132; *Batson* v. *Donavan*, 4 B. & Ald., 36; Wharton on Negligence, § 44; 16 How. [U. S.], 474; *Hinton* v. *Dibben*, 11 Q. B., 659; 105 Mass., 479; Sherman & Redfield on Negligence, § 16, and note; 24 N. Y., 181, 206, 241.) The question of gross negligence was properly submitted to the jury. (*Doorman* v. *Jenkins*, 2 Ad. & Ellis, 256; *Griffith* v. *Zipperwick*, 28 Ohio St., 388; *Tracy* v. *Wood*, 3 Mason, 132; *Wilson* v. *McIntosh*, 1 Starkie [N. P. C.], 237; *Clark* v. *Earnshaw*, 1 Gow., 30; Wharton on Negligence, § 240; *Stout* v. *R. R. Co.*, 17 Wall., 657; *Dearborn* v. *Union Nat. Bank*, 61 Me., 369; *Erie Bank* v. *Smith et al.*, 3 Brewster [Penn.], 9; *First Nat. Bank of Carlysle* v. *Graham*, 85 Penn. St., 91; *Storer* v. *Gowen*, 6 Shepley [Me.], 174; *Mytton* v. *Cock*, 2 Strange, 1099; 3 Bingham [N. C.], 468; *The Phil. and R. R. R. Co.* v. *Spearem*, 47 Penn. St., 305; *Westchester, etc., R. R. Co.* v. *McElwee*, id, 315; *Bernhardt* v. *Saratoga, etc., R. R. Co.*, 23 How. Pr.; *Earnst* v. *Hudson R. R. R. Co.*, 35 N. Y., 39; 38 id., 49; 50 id., 23, 26; *Booth* v. *Wilson*, 1 Barn. & Ald., 59; Wharton on Negligence, §§ 461, 462, 463, 465, 468; Sherman & Redfield on Negligence, §§ 16–24; *The Third Nat. Bank of Baltimore* v. *Boyd*, 44 Md., 47; *Griffith* v. *Zipperwick, etc.*, 28 Ohio St., 388; *Moore* v. *Westcott*, 21 N. Y., 103; *Mattison* v. *N. Y. C. R. R. Co.*, 62 Barb., 364; *Hume* v. *Mayor, etc.*, 47 N. Y., 639; *Gillespie* v. *Newling*, 54 id., 468; *Malloy* v. *N. Y. C. R. R. Co.*, 58 Barb., 182; *Keating* v. *N. Y. C. R. R. Co.*, 49 N. Y., 673.)

Rapallo, J. The leading point made by the appellant is, that a bank organized under the national banking act (Laws of U. S., 1864, chap. 106) has no authority to receive special deposits of securities, etc., for safe-keeping, and that

consequently the defendant incurred no liability by the receipt by its teller of the package deposited by the plaintiff, and cannot be held responsible for its loss, even though the teller in receiving the deposit assumed to act in behalf of the bank, in accordance with its practice, and did so with the knowledge of its managers, and the loss occurred through gross negligence on the part of the officers of the bank. The respondent disputes both the premises and the conclusion.

In most of the cases in which the question of the liability of banks for special deposits has been considered, and which will be more particularly referred to hereafter, the corporate power of a bank to bind itself by such a transaction has been conceded or not disputed, and the cases have turned upon questions relating to the authority of the officers receiving the deposits, and the degree of negligence by which the loss was occasioned. If it be assumed that the receiving of such deposits is a legitimate part of the business of banking, and that banks, not organized under the act of Congress, which see fit to receive such deposits, may do so, there is nothing in the act of 1864 which especially restricts national banks in this respect. The act provides (§ 5) that associations for carrying on the business of banking may be formed in a certain manner. Section eight declares that upon complying with the provisions of the act, such associations shall be corporations, and may adopt a corporate name, and may in that name make contracts ; and further that they may exercise under the act all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt ; by receiving deposits; by buying and selling exchange, coin and bullion ; by loaning money on personal security, by obtaining, issuing and circulating notes according to the provisions of the act. It cannot be contended that because the power to receive special deposits is not particularly mentioned, therefore it is intended to place banks organized under this act on a different footing in that respect from other banks. There are many contracts inci-

dent to the banking business, which, although not enumerated in the act, are daily made by national banks without question as to their authority, such as receiving notes, checks, etc., for collection, etc.   They are authorized to make any contracts which legitimately appertain to the business of banking, and if receiving special as well as general deposits falls within the scope of that business, the power to receive deposits, includes all kinds of deposits which are known and customary in the banking business.

That the enumeration of banking powers contained in the act of 1864 was not significant of an intention to place any special restriction upon national banks, as distinguished from State banks, is apparent from the fact that it is a usual formula, descriptive of the banking business, contained in bank charters (*Charter of Com'l Bank of Albany*, Laws of 1825, p. 198; *Dutchess Co. Bank*, id., p. 204), and is almost identical with that contained in the general banking law of 1838 (Laws of 1838, p. 249, § 18), which provides that " such association shall have power to carry on the business of banking by discounting bills, notes, and other evidences of · debt ; by receiving deposits ; by buying and selling gold and silver bullion, foreign coins and bills of exchange in the manner specified in this act ; by loaning money on real and personal security, and by exercising such incidental powers as shall be necessary to carry on such business."   The meaning of the two provisions is the same, and their language is the same, except in the order of arrangement.   In both, the business of banking is defined, that is, discounting paper, receiving deposits, etc., and all · powers incident to these general banking powers are added.   In the act of Congress the frame of the sentence is that national banks shall exercise all such incidental powers as shall be necessary to carry on the business of banking, and then follows a description of the banking business, while in the act of 1838 the banking business is first described and the grant of incidental powers follows.   The enumeration in the act of Congress is not of the incidental, but of the principal powers, and to them are

superadded all incidental powers. The question remains the same therefore as to a national as to a State bank, whether the power of receiving special deposits is incidental to the banking business, and no distinction can be made in determining this question between a State and a national bank.

In the leading case upon the subject, *Foster* v. *Essex Bank* (17 Mass., 479, A. D., 1821), where a special deposit had been made with the defendant, of a cask containing gold coin, it was shown that it had been the practice of the bank to receive special deposits of money and other valuable things, but there was no regulation or by-law or provision of the charter upon the subject. The counsel for the plaintiff, as in the present case, claimed that it had been the practice of banks from the earliest periods to receive such deposits. That the bank of England had no express power to do so, but it had become a part of its duty or business, by usage, and belonged to the very nature of such institutions. On the other side it was denied that the bank had any such power, or that it was incidental to the business of a bank or banker ; that the authority could not be inferred from usage, and the repetition of unauthorized acts by the officers could not give them validity, and the officers only, and not the bank, were bound. The point was thus distinctly presented. It was argued by the most eminent counsel of the period and decided by a court of distinguished reputation. The court held that the practice of the bank having been to receive such deposits, and its · building and vaults having been allowed to be used for that purpose, and its officers employed in receiving into custody the things deposited, the corporation must be deemed the depositary, and not the cashier or other officer through whose particular agency the property had been received into the bank.

The next case on the point is *Lloyd* v. *The West Branch Bank* (15 Penn. St. R., 172), decided in 1850. It was there held that the power to receive deposits, conferred on the bank by the Pennsylvania banking law, referred to deposits of current money received as such, and not to special

deposits. 'But the court, although indulging in some strong expressions indicative of an opinion that the statute did not intend to confer the power, states the question to be whether there was any such general custom or practice of the cashier of the bank to act as a voluntary bailee without reward, as to make the bank liable for his acts, and the decision rests upon the want of evidence of any such practice. The court was undoubtedly correct in holding, as it expresses itself, that it was not intended that banks should be turned into pawnbrokers shops, or receive old clothes on deposit. But the case is not an authority for the proposition that if a bank is in the habit of receiving on deposit coin or other valuables, such as are usually the subject of special deposits in banks, it will not be bound by the act of its officers in receiving them.

But in later cases in the same State the doctrine of *Foster* v. *The Essex Bank* is expressly recognized, and applied to national banks. In *Lancaster Co. National Bank* v. *Smith* (62 Penn. St. R., 47), where a special deposit of United States bonds had been made with the bank by delivering them to the teller, and the teller had subsequently delivered them to a third party, supposed to be the depositor, but without ascertaining his identity, the bank was held liable. The case of *Lloyd* v. *West Branch Bank* was referred to, but the power of the bank to bind itself by receiving the deposit was not disputed, and it was held that it was a question for the jury whether the bank had been guilty of gross negligence.

In *Scott* v. *National Bank of Chester Valley* (72 Penn. St. R., 471), the facts were almost identical with those in *Foster* v. *The Essex Bank.* A special deposit of bonds for safe-keeping had been made with the defendant by one of its customers, and the bonds were stolen by the teller of the bank, but no negligence on the part of the bank was established and a verdict for the defendant on that ground was sustained. The receipt of the bonds was not claimed to be *ultra vires.*

In *First National Bank of Carlisle* v. *Graham* (79 Penn. St. R., 106), the plaintiff sued for the loss of United States

bonds claimed to have been deposited by her with the bank, and relied upon a receipt for the bonds, signed by the cashier of the bank, in which he acknowledged that she had left the bonds in the bank for safe-keeping. It was admitted that government bonds were received by the bank for safe-keeping, with the knowledge of the president, cashier and teller, and without compensation. A verdict and judgment having been rendered for the plaintiff, it was reversed on exceptions to rulings on questions of evidence and to some portions of the charge in submitting to the jury the question of negligence, but on the point of the liability of the bank, the doctrine of *Foster* v. *Essex Bank* was emphatically reiterated, and it is stated that the rule as laid down in that case has been uniformly applied in the Supreme Court of Pennsylvania in cases involving the rights and duties of national banks.

In *Turner* v. *First National Bank of Keokuk* (26 Iowa, 562), the liability of a national bank for a special deposit of bonds was also recognized. *Smith* v. *First National Bank of Westfield* (99 Mass., 605) was also a case of a special deposit of bonds with a national bank, and the bank was held to be bailee of the bonds, but liable only for want of ordinary care. To the same effect is *Giblin* v. *McMullin* (L. R. [2 P. C.], 317).

In *Chattahoochee National Bank* v. *Schley* (58 Ga., 369), the court, after referring to some of the cases which have been cited, and also to the recent cases of *First National Bank* v. *Ocean National Bank* (60 N. Y., 278), and *Wiley* v. *First National Bank of Brattleboro* (47 Vt., 546), summarizes its view of the existing law as follows : " By habitually receiving through its cashier, special deposits to be kept gratuitously for mere accommodation, a national bank will incur liability for gross negligence in respect to any such deposits, received in the usual way." This I adopt as a concise and accurate statement of the result of the decisions to which I have referred.

The only adjudications to be found in conflict with this doctrine are the case of *Wiley* v. *First National Bank* (47

Vt., 546), followed by the same court in 50 Vermont, 389, where it was held, in direct opposition to all the cases I have cited, that when a special deposit is received by a national bank, even in accordance with usage, and with the knowledge and acquiescence of the directors of the bank, the bank is not liable for its loss, even by gross negligence; and this is put upon the ground that the bank has no corporate capacity to receive such deposits for safe-keeping, and consequently cannot empower any of its officers to incur liability in its behalf by so doing.

There are some cases in which the Vermont cases are referred to with approval, by the judge writing the opinion, (*Third Nat. B'k of Baltimore* v. *Boyd*, 44 Md., 47, and *First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y., 278), but there is no other adjudication to the same effect. In the case in 60 N. Y., the opinion expressly states that it is unnecessary to consider the question of the power of the bank; that it is a question not free from difficulty, but can be more satisfactorily considered when it becomes necessary to a judgment. The opinion proceeds upon the ground that the receiving of special deposits was not shown to be part of the ordinary business of the bank. That there was an entire absence of evidence that it was the habit or practice of the defendant to receive such deposits. That no authority to the cashier or assistant cashier to receive special deposits had been shown, and that, whatever might be the incidental powers of the corporation, the power of its officers to bind it can be presumed only to exist within the scope of its ordinary business and their ordinary duties. It is upon this distinction between the facts in the case before the court and those in *Foster* v. *Essex Bank* that the opinion proceeds, and not upon a rejection of the doctrine of that case. The opinion, even in so far as it rests upon that distinction, was not concurred in by the majority of the court, there being an exception upon another point which was sufficient ground for reversal of the judgment, and the majority concurred only in the result. What is said by the learned judge in respect to the Vermont case is merely incidental, and forms

no part of the reasoning of the opinion, and was not considered or passed upon by the court.

Appended to a report of the case in 47 Vt., contained in 14 Am. Law Reg. (N. S.), 348, is a note by an eminent jurist approving the decision, and criticising the proposition that any practice or usage of a bank in receiving special deposits can supply the want of corporate power, and repeating the same arguments which were urged by counsel in the case of *Foster* v. *Essex Bank* (17 Mass., 479). This want of corporate power is alleged on the ground that the power to receive deposits does not embrace receiving special deposits of valuables for safe-keeping, and that the receipt of deposits of that character is wholly outside of and foreign to the business of banking, and cannot be regarded as incidental to that business.

For the purpose of determining whether such is the case, the counsel for the present respondent has referred to the history of banking from its earliest period, and to the definitions by lexicographers, of the banking business. This would seem to be a proper way of ascertaining what is legitimately within the scope of the business of banking, and what are the powers of corporations formed for the purpose of carrying on that business. When the attributes of a particular calling come in question, they can only be ascertained by showing what has been the general usage and practice of persons engaged in that calling, and what business has been generally transacted by them, and understood to appertain to such calling. Thus only can it be ascertained what transactions are within or without the scope of such calling. A reference to the history of banking discloses that the chief, and in some cases the only, deposits received by the early banks, were special deposits of money, bullion, plate, etc., for safe-keeping, to be specifically returned to the depositor; that such was the character of the business done by the Bank of Venice (the earliest bank) and the old Bank of Amsterdam, and that the same business was done by the Goldsmiths of London and the Bank of England, and we know of none of the earlier

banks where it was not done.   The definition of the business of banks of deposit, in the encyclopædias, embraces the receiving of the money or valuables of others, to keep until called for by the depositors.   (1 Encyclopædia Americana ; Bank 543; 1 English Encyclopædia of Arts and Sciences, 833, 837, 841.)   And although, in modern times, the business of receiving general deposits has constituted the principal business of the banks, it cannot be said that the receiving of special deposits is so foreign to the banking business, that corporations authorized to carry on that business are incapable of binding themselves by the receipt of such deposits.   The numerous cases in the books relating to special deposits in banks, disclose how extensively, even in modern times, this business has been and is carried on, and the general understanding in respect to it.   The very act of Congress under which the national banks are organized recognizes the practice, and provides for the return of special deposits by national banks, even when required to suspend their general business.   Section 46 of the act of 1864 provides that, in certain events, the banks shall cease to prosecute business, " except to receive and safely keep money belonging to them, *and to deliver special deposits.*"   This provision assumes that such banks will receive special deposits, and impliedly recognizes and sanctions their so doing, by making express provision enabling them to return them at a time when they are prohibited from paying out to depositors funds held on general deposit.

The Vermont case, referring to this provision, says that it was not intended to extend the powers of the bank.   Perhaps not; it rather indicates that the framers of the bank act assumed that banks had power to receive special deposits without any express authorization, and that it was an incident of the banking business, and would, as such, be exercised by the bank.   It is further suggested that the term special deposits refers to securities held by the banks as collateral to loans.   This interpretation is wholly inadmissible.   Such securities are in no sense deposits.   The term special deposits

has, and has always had, a well known and defined meaning. In the *Marine Bank* v. *The Fulton Bank* (2 Wall., 252, 256), MILLER, J., says : "all deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor the title to the thing deposited remaining with the latter ; and that other kind of deposit of money, peculiar to banking business, in which the depositor for his own convenience parts with the title to his money, and loans it to the banker." This description marks the distinction between general and special deposits. In Story on Bailments (§ 88), the same distinction is recognized, and also in *Rawson* v. *Real Estate Bank* (5 Ark., 297). In the Vermont case itself, at page 554, the court defines general deposits ; and says that at the time of the passage of the act, deposits in banks had a well known and understood meaning, and that the delivery of money, securities, or other property, to be specifically kept and re-delivered, had been equally well known as special deposits. And in *Turner* v. *First Nat. Bank of Keokuk* (26 Iowa, 562) the authority to return special deposits, contained in section forty-six, is held to refer to deposits of securities for safe-keeping.

That it was understood at the time of the passage of the national banking act, that the banks organized under it were authorized to receive special deposits, is further evidenced by a cotemporaneous circular, addressed to the banks by the eminent comptroller of the currency, H. McCullough, in 1864 in these words : "In order to encourage economy and the habit of saving among the poor of the country, and more especially of the larger cities, it is suggested that national banks act as custodians, without charge, of United States bonds and other representatives of value which that class of persons desire to leave with them for safe-keeping. Bank officers that approve of this suggestion will please give such notice of their willingness so to act, as is necessary for the information of the parties who are to be benefited." The banking act was passed, and this circular was issued, in the light of the decision in the case of *Foster* v. *Essex Bank*, which declared

the extent of the liability incurred by banks in respect to such deposits, a case often cited and well known, especially among those concerned in the business of banking. It cannot be doubted that it was well known to the framers of the act, and the banking department; and there is nothing in the act, or in the cotemporaneous history, to indicate that it was the policy or intention to establish any rule in respect to national banks, different from the doctrine enunciated in that case.

On the question of corporate power, we are therefore of opinion that national banks have power to receive special deposits, gratuitously or otherwise, and that when received gratuitously they are liable for their loss by gross negligence.

The next question in the case is as to the authority of the teller to act for the bank in receiving the deposit in question. The evidence bearing on this point was that the bank had been accustomed to receive packages, supposed to contain securities, from various persons for safe-keeping. That Orrin Ballard was cashier of the bank and his son Leon Ballard was teller, but sometimes acted as cashier in the absence of his father. That Orrin Ballard had the management and control of the affairs of the bank. It did not appear that the president or directors took any part in its management or that the directors held any meetings. That some of the persons who left valuables in the bank for safe-keeping were directors. That at some time before the deposit in question, a trust company was formed in Syracuse for the receipt of valuables for safe-keeping, and that, after the formation of that company, Mr. Ballard the cashier said to his son that they had better not take any more packages for safe-keeping, but the son says that this was not a positive instruction but only an expression of opinion, and he afterwards received packages. The son also testified that he told the plaintiff that his package would be at his own risk. This was contradicted by the plaintiff. The teller also testified that his father sometimes told persons depositing packages that they would be at their own risk, but that on other occasions packages were received without such notice. The

package of the plaintiff was left by him with the teller at the bank, and remained there some two years before it was lost, being occasionally taken out by the plaintiff to cut off coupons, etc., and returned by him to the bank. The court submitted to the jury the question whether the teller had been authorized to receive such deposits, whether he did so in his individual capacity, or in behalf of the bank, and whether he told the plaintiff that the package would be at his own risk, and whether the teller had been directed to discontinue receiving deposits of securities, and instructed the jury that if the deposit was with the teller as an individual, the plaintiff could not recover. We think the evidence was sufficient to justify the submission to the jury of the questions of the authority of the teller, and whether the deposit was with the bank, in this manner, and that their verdict establishes such authority, and that the deposit was with the bank, and not with the teller in his individual capacity. The entire management and control of the affairs of the bank having been left with the cashier, his acts and the authority conferred by him upon the teller, must be deemed binding on the corporation.

The verdict thus establishing that the plaintiff's securities were received on deposit by the bank, it was bound either to return them or show some sufficient ground for not doing so. It claims that they were stolen from the safe by some person other than the employees of the bank, and the remaining question in the case is whether the theft was suffered through the gross negligence of the bank in the care of the bonds. This question was submitted to the jury and we think the evidence was sufficient to authorize such submission. There was no burglary, and no direct explanation of the circumstances of the loss of the bonds, but there is evidence in the case tending to show that, if stolen, the theft was committed in the day time while the bank was open. That the bonds were in a safe so situated as to be accessible to a person entering from the street; that the persons in the bank were so placed that at times the safe was not in their view, and that

sometimes the door of the safe was left open. The jury could from the evidence have found that the theft was committed by some person entering from the street and finding the safe open, who abstracted the plaintiff's package without being observed by any one in the room, and that leaving the property thus exposed was gross negligence. There was some conflict and confusion in the evidence on these points, but these were matters exclusively within the province of the jury.

The fact that property of the bank was stolen at the same time from the same place, is not conclusive against the allegation of gross negligence. (*Doorman* v. *Jenkins*, 2 Ad. & Ell. 256 ; *Griffith* v. *Zipperwick*, 28 Ohio St., 388 ; *Tracy* v. *Wood*, 3 Mason, 132 ; *Wilson* v. *McIntosh*, 1 Stark. [N. P.], 237.) These were all cases of gratuitous bailments, and the question of gross negligence was left to the jury, notwithstanding that the bailee took the same care of the property as he did of his own which was stolen at the same time.

It has been argued on the part of the respondent that even assuming the receipt of special deposits to have been beyond the legal power conferred upon the bank by the law under which it was incorporated, yet that it having in fact received the plaintiff's property into its custody, it cannot set up its own want of corporate power as a defence to an action for not returning it, or for losing it by gross negligence. The conclusion which we have reached on the question of power renders it unnecessary to pass upon this point.

After a careful examination of the whole case we think the judgment should be affirmed.

All concur.

Judgment affirmed.