# Cases

JACOB OUDERKIRK, Respondent, *v.* THE CENTRAL NATIONAL BANK OF TROY, Appellant.

*Liability of a bank for bonds deposited with it and disposed of by its cashier — when it will be held to be a mandatary and not a depositary.*

The plaintiff, in 1884, deposited certain bonds with the defendant, a bank, as collateral security to notes discounted by it for him, the last of which notes was finally paid on January 26, 1887. The plaintiff being on that day ill his son-in-law, Mr. Face, went to the bank for the note, and the cashier gave him the note, to which there was attached what looked like bonds. These the cashier did not give to him, but gave him a paper, dated on that day, which certified:

"That Mr. Jacob Ouderkirk has had deposited in this bank, as collateral security to any and all loans made to him direct, $1,500 par value U. S. 4 per cent coupon bonds; that all said loans thereon having been paid and canceled said bonds are left for future like use or safe-keeping, subject to the order of said Ouderkirk. Coupons to be collected when due and return made to him as heretofore. "A. W. WICKS."

The bank having refused to deliver the bonds to the plaintiff upon a demand made in February, 1888, this action was brought to recover for the wrongful detention of the said bonds. The answer denied the conversion, alleging that the bank had not the bonds; that it never authorized the cashier to receive them, and that the cashier converted them to his own use.

*Held*, that as the bonds were in the custody of the bank, as pledgee, in the first instance, and so continued until the last note was paid, and Mr. Face, agent of the plaintiff, saw what purported to be the bonds attached to the note at the time when the note was delivered to him and the receipt was given, it must be assumed to have been proved that the bank then had the bonds.

HUN — VOL. LII     1

That the contract was quite different from a deposit, strictly so-called; that the bank was a mandatary rather than a depositary, and was, to a certain extent, an agent of the plaintiff in collecting the coupons.

The defendant, to justify its not returning the bonds, proved that such bonds were kept in a steel safe in the vault; that such safe had a lock of which only the president and cashier had the combination; that the president did not take the bonds, nor did the clerks or bookkeepers. The cashier was not called. The president spoke of the cashier's defalcation as occurring about December 20, 1887, but no proof of such defalcation was given. It was also shown that up to the date last mentioned the cashier was a man of good reputation.

The court charged that the plaintiff was entitled to recover unless the defendant could show that the loss was not caused by any act of neglect on the part of the defendant; that the defendant was not only liable in case of gross neglect, but liable where the loss was occasioned by any neglect on its part. The court also charged that the defendant had undertaken to show that it did all which it reasonably could to protect these securities.

*Held*, that this latter part of the charge must be considered as explanatory of the meaning of the judge in the use of the words "any neglect."

That, under the circumstances of this case, which were not inconsistent with the careless surrender of the bonds to some person by the cashier or their possible sale and the receipts of the avails of their proceeds by the bank, the charge was not erroneous.

*Quære*, whether the bank would be liable in case a willful taking of the bonds by the cashier were proved.

APPEAL by the defendant from a judgment entered, upon the verdict of a jury rendered at the Rensselaer County Circuit, in the office of the clerk of the county of Rensselaer, on October 11, 1888.

The plaintiff, being the owner of certain bonds, in question in this action, gave them to the defendant, a bank, in 1884 as collateral security to a note of his discounted by it. This note, after having been renewed, was finally paid. Subsequently the plaintiff had another note discounted by the bank, and these bonds remained as collateral to that note, which was finally paid January 26, 1887. On that day the plaintiff was ill, and his son-in-law, Mr. Face, went to the bank for the note. The cashier gave him the note, and there were attached what looked like bonds. These the cashier did not give him; but he did give Mr. Face a paper as follows:

"TROY, N. Y., *January* 26, 1887.

"This certifies that Mr. Jacob Ouderkirk has had deposited in this bank, as collateral security to any and all loans made to him direct, $1,500 par value U. S. four per cent coupon bonds; that all

said loans thereon having been paid and canceled, said bonds are left for future like use or safe-keeping, subject to the order of said Ouderkirk; coupons to be collected when due and returns made to him as heretofore. ·                    "A. W. WICKES."

Subsequently, in February, 1888, the plaintiff demanded the bonds and the bank did not deliver them, alleging they were not then in its possession. The complaint alleges the receipt of the bonds by the bank and its wrongful detention. The answer denies the conversion; alleges that the bank has not the bonds; that it never authorized the cashier to receive them, and that the cashier converted them. The jury rendered a verdict for plaintiff, and the defendant appealed.

*Orin Gambell*, for the appellant.

*Nelson Davenport*, for the respondent.

LEARNED, P. J.:

The bonds were certainly in the custody of the bank, as pledgee, in the first instance, and so continued till the last note was paid. If, by the giving of the receipt of January 26, 1887, the bank became a gratuitous bailee, still it had authority so to act (*Pattison v. Syracuse National Bank*, 80 N. Y., 82); and the plaintiff was not chargeable with knowledge of any directions given by the bank to its cashier in that respect. The bonds must be considered to have been deposited with the bank, not with the cashier individually. Mr. Face, the agent of the plaintiff, at the time when the note was delivered to him and the receipt was given, saw what purported to be the bonds attached to the note. Therefore, there is no reason to think that the bonds were not then in the possession of the bank. If they had been converted or lost previously to that time, another question might have arisen; but the receipt, not being disproved, must be held to show that the bank then had the bonds.

If a creditor, holding a pledge, assent, after payment of the debt, to hold the pledge for the benefit of the debtor, it becomes a deposit. (Story on Bail., § 55.) That rule has reference, of course, to a gratuitous holding, from which the holder is to derive no benefit. In the present case we must judge from the receipt what was the nature of the holding by the bank. It was to be not only for safe-

keeping, but "for like use," that is, for use as a collateral to loans which might be made in the future. The bank also was to have the right to collect the coupons and make returns as heretofore, This collecting of coupons, payable in another place, was a regular part of banking business. It was a slight benefit to the bank, giving it funds in New York. And it is plain that the arrangement was somewhat different from the ordinary care of keeping, in a bank vault, a locked box, to the contents of which the bank has no rightful access. Deposit, as it is accurately called, is entirely gratuitous, and because there is no benefit whatever to the depositary, the general rule is that he is liable only for gross negligence. (Dig., Book 13, 6. 5, 2.) But here, to say nothing of the anticipated profit in making a loan on this collateral, there was the distinct benefit of collecting the coupons and making returns to the plaintiff. The bank was employed by plaintiff to collect from time to time the sums payable for interest, and for that purpose it had the custody of the bonds, with the right to receive payment of such interest and to surrender the interest coupons, and thus it was plaintiff's agent.

It seems to us that this is a contract quite different from a deposit, strictly so-called. For instance, in the case of *Foster* v. *Essex Bank* (17 Mass., 479), a case which has some analogy with the present, Foster left a case of gold coin for safe-keeping. The court said it would have been a breach of trust to open the case or inspect its contents. When the bank, in fear of danger, removed its own specie to another town, it did not feel authorized to remove this without the owner's consent. It is evident that in the present case the bank had other authority and right in respect to these bonds, and other duties also. And, without entering on the disputed point whether a mandate must be gratuitous, we might probably say that, as something was to be done by the bank, it was a mandatary rather than a depositary. It was, to a certain extent, an agent of the plaintiff, that is in collecting the coupons.

In *Pattison* v. *Syracuse National Bank* (*ut supra*) it is said that as "the plaintiff's securities were received on deposit by the bank, it was bound to return them or show some sufficient cause for not doing so." In that case the bank claimed that they were stolen by some person other than employees of the bank, and

the question was whether the theft was suffered through the gross negligence of the bank.

In the present case the defendant, to show cause for not returning the bonds, proved that such bonds were kept in a steel safe in the vault, which safe had a lock, of which only the president and cashier had the combination. The defendant proved that the president did not take the bonds, nor did the clerks or bookkeepers. The cashier was not called. The president spoke of the cashier's defalcation as occurring about December 20, 1887. No direct proof of such defalcation was given. The president testified that, if the cashier was away, this safe was not opened. It is also shown that up to the date last-mentioned the cashier was a man of good reputation. The court charged that the plaintiff was entitled to recover unless the defendant could show that the loss was not caused by any act of neglect on the part of the defendant; that the defendant was not only liable in case of gross neglect, but was liable where the loss was occasioned by any neglect on its part. To this part of the charge the plaintiff excepted. The question then is whether, on the facts of this case, the defendant was liable only for gross negligence; or, more accurately, whether the defendant might excuse itself for not returning the bonds by showing that they were lost without gross negligence. In another part of the charge the judge said that the defendant had undertaken to show that it did all which it reasonably could to protect these securities; and this must be considered as explanatory of the meaning of the judge in the words " any neglect." If this had been a case of merely gratuitous bailment, then probably the exception would have been well taken. But under the circumstances of this case we think the charge was not erroneous, as above explained. Whether the bank would be liable for a willful taking of the bonds by the cashier is a question not distinctly presented. The facts of the case are consistent with the careless surrender of the bonds by the cashier to some person other than plaintiff. It is even possible, under the proof, that the bonds were sold by the cashier and the avails received by the bank. For no proof is given by defendant as to the time when, or the manner in which, the bonds passed from its possession. The examinations occasionally made by the directors and by the

United States officials did not include such deposits as that of the plaintiff.

We are of opinion that the judgment and order should be affirmed, with costs.

LANDON and INGALLS, JJ., concurred.

Judgment affirmed, with costs.