MERCHANTS NATIONAL BANK OF SAVANNAH *v.* GUILMARTIN.

88  797
93  504
88  797
95  284
95  395

1. The essence of a contract of bailment is diligence, and when the bailee shows the exercise of that degree of diligence required by law of his class, he is discharged, although the thing bailed be stolen or lost.   For a special deposit, received by a bank through its cashier for gratuitous safe-keeping and return to the depositor on demand, the bank is not liable if the cashier, without its knowledge or consent, steals it or fraudulently appropriates it to his own use, provided the bank has exercised due diligence in selecting the cashier and in not keeping him in office after it knew, or ought to have known, that he was or had become untrustworthy.   In stealing or clandestinely appropriating the deposit to his own use, the cashier would not be acting in the bank's business, or within the scope of his employment; he would be representing himself and not the bank.   The code, §§2201, 2961, does not vary this rule in respect to gratuitous bailments, inasmuch as the degree of diligence touching such bailments is no higher under the code than at common law.

2. A special deposit is gratuitous if it be accepted for the accommodation of the depositor, and without any undertaking by him, express or implied, to pay or do anything as compensation or reward for keeping the deposit.

August 23, 1892. Argued at the last term.

Bailments. Banks and depositors. Diligence. Before Judge HARDEN. City court of Savannah. July term, 1891.

Action by Guilmartin against the bank, alleging that it was indebted to him $20,000 in this: On March 7, 1887, he had entrusted to and bailed as a special deposit in the charge and custody of defendant, which was then engaged in the business of banking, certain bonds for which the bank gave him receipts dated March 7, 1887, specifying that the securities therein described were "to be held subject to his order," and signed by the cashier of the bank as such. On April 18, 1891, at the banking house of the defendant, plaintiff demanded that the bonds be delivered to him by the defendant, but it failed and refused so to deliver them, whereby it became liable, etc. The defendant pleaded not indebted; and that all due care in the keeping of plaintiff's bonds was exercised, and before demand was made for them they were, without fault on its part, feloniously taken and stolen. Under the evidence and charge of the court, the jury found for the plaintiff; and the defendant excepted to the denial of a new trial. The grounds for new trial which are here material are stated in the opinion.

ERWIN, DUBIGNON & CHISHOLM, for plaintiff in error.
CHARLES N. WEST, *contra.*

LUMPKIN, Justice.

The main question raised in the record is whether a bank, which through the cashier received from one of its customers a special deposit of valuable securities to be kept simply for the depositor's accommodation and returned to him on demand, shall be held liable for the felonious appropriation of the securities by the cashier to his own use, he taking them while they were in the bank. The answer to this question depends on the nature of the duty assumed by the bank with respect to

the deposit.   Such a deposit belongs to the class of bail-
ments termed " gratuitous," and the test of the bailee's
liability on a loss of the property is to inquire whether
he exercised the full amount of diligence which the law
exacts as the measure of his duty in keeping the prop-
erty.   Each kind of bailment imposes on the bailee the
obligation to use a degree of care commensurate to some
extent with his interest in the transaction.   If the bail-
ment is for the benefit exclusively of the bailee, he must
use extraordinary care; if for the mutual benefit of the
parties, ordinary care ; and if for the exclusive benefit
of the bailor, slight care will suffice.   Thus the essence
of a contract of bailment on the part of the bailee is for
diligence of the required degree, and when he has used
such diligence his contract is performed and he dis-
charged, although the property may be lost during his
custody of it.   Accordingly we find the authorities
holding that the bank is not liable for the loss of a
special deposit, to keep which it receives no compensa-
tion, by the theft of its cashier or other servant, provided
it has not been guilty of gross negligence in any respect.
Foster v. Essex Bank, 17 Mass. 479, 9 Am. Dec. 168 ;
Scott v. National Bank, 72 Pa. St. 471, 13 Am. Rep.
711; First Nat. Bank v. Rex, 89 Pa. St. 308, 33 Am.
Rep. 767 ;  Giblin v. McMullen, L. R. 2 P. C. 317 ; Ed-
wards, Bailm. §45 ; Schouler, Bailm. §42 et seq.; 2 Ad-
dison, Contr. §804 ;  Bolles, Banks & Dep. §6 et seq.;
Morse on Banks, §§102(e), 201.   The bank may be guilty
of negligence, and liable accordingly, in employing or
retaining an unfit person in the position of cashier.  But
when it does its full duty in selecting a proper person,
and in not disregarding indications of dishonesty which
ought to arouse suspicion and investigation, then it is
not responsible to one who has obtained from it the favor
of barely keeping specific property without recompense,
though the cashier steal the property so put in his

charge. The law as disclosed by the authorities seems to consider that, in the case of a gratuitous special deposit, there is consideration enough in the bare custody of the property to insure its being kept without gross negligence, but not enough to bind the bank as an absolute insurer of its servant's honesty. The depositor contemplates, of course, and consents that the cashier or some other agent is to be the personal guardian of the deposit. If the bank has selected, and continues him in office, with due regard to the immense interests confided to him, his defalcation is a risk assumed by such a depositor. The bank being equally liable to suffer by the same kind of misfeasance, thus evinces *prima facie* its good faith in having the wrong-doer in its service. As far as the question of mere negligence is concerned, the bank can plead its not knowing or having cause to suspect the integrity of its officer. But it has been strongly urged that the bank, as master, is liable for the fraud of the cashier, its servant, in the course of its business. This is the point of most difficulty. Every bailee is bound to exercise good faith, and abstain from fraud, in keeping the property. Bad faith is at least as bad as gross negligence, and entails as much liability. The application of this is easy where the very person to whom the property was entrusted is guilty of the fraud. But suppose the master, being the bailee, is personally blameless, and his servant is the guilty one, shall the master be held liable? At common law there was once some authority that the master was not liable for the unauthorized willful tort, which of course included fraud, of his servant. But the better view is that the master is liable for every tort by the servant which is within his authority or is committed in the prosecution and within the scope of the business. It is often hard to draw the line between torts within and torts without the master's business. On the question now to be de-

cided, the cases hold that the act of the cashier by which he appropriates exclusively to himself a gratuitous special deposit in the bank, is not an act done in the bank's business and within the scope of his employment. The custody of the deposit implies no act to be done, but only a mere continuance of possession until a return of the property is demanded. The cashier had nothing to do about it except suffer it to remain in a safe place of deposit. Consequently, in taking it to himself he is said to "step aside" from his employment to do an act for his personal gain, regardless of the business for which he was engaged. Such an act is lacking both in the rendition of, and in the intent to render, any service to the employer. The cashier does not, as a matter of fact, act with the bank's authority, and furthermore does not essay or even profess to act in its behalf. He represents nobody but himself. He throws off all allegiance to his master, and takes the part of a common enemy to all concerned. He becomes the same as a stranger from without who by robbery, burglary or stealth, deprives the bank of a special deposit; and the authorities hold that the bank is not chargeable with such a loss, in the absence of gross negligence, but is liable if grossly negligent. Griffith v. Zipperwick, 28 Ohio St. 388; Hale v. Rawallie, 8 Kans. 136; Levy v. Pike, 25 La. An. 630; First Nat. Bank v. Graham, 79 Pa. St. 106, 21 Am. Rep. 49, 100 U. S. 699; First Nat. Bank v. Ocean Nat. Bank, 60 N. Y. 278; Wylie v. Northampton Nat. Bank, 119 U. S. 361; Whitney v. First Nat. Bank, 55 Vt. 155, 45 Am. Rep. 598; Schermer v. Neurath, 54 Md. 491. Such a fraud, by a well-selected servant duly supervised, is not to be imputed to the bank as its own fraud. The bank cannot be said to have stolen when there is on its part no participation in the theft, no appropriation and no intent to appropriate the property. Of course if the bank

v 88-51

derive profit or benefit from its servant's peculation, it is liable. United Society *v.* Underwood, 9 Bush, 609; First Nat. Bank *v.* Dunbar, 118 Ill. 625. No case has been found which holds the bank liable because the defaulting cashier was acting in the prosecution and within the scope of the bank's business when he appropriated the deposit, but such liability when affirmed is rested specifically upon the existence of gross negligence. Pattison *v.* Syracuse Nat. Bank, 80 N. Y. 82, 36 Am. Rep. 582; Preston *v.* Prather, 137 U. S. 604. The common law appears to be that a master generally is not liable for the servant's fraud or willful tort, unless he is acting at the time by the master's express authority or in the conduct of his business, that is to say at his actual or implied instance. The servant must in the wrongful act be acting or intending to act in behalf of the master, and in the course of his employment. Pollock on Torts, pp. 55, 61; Cooley on Torts, pp. 627 *et seq.*, 754; Evans' Princ. & Ag. 558, 559; 1 Bigelow on Fraud, 225; Fraser on Mast. & Serv. 280; 45 Alb. L. J. 530; Barwick *v.* English Joint Stock Bank, L. R. 2 Ex. 259; Hubberty *v.* Ward, 8 Ex. 330; Grant *v.* Norway, 10 C. B. 665; Coleman *v.* Riches, 16 C. B. 665; Erb *v.* Great West. Ry. Co., 5 Can. S. C. 179, 194; British Mutual Banking Co. *v.* Charnwood &c. Co., L. R. 18 Q. B. D. 714; Howe *v.* Newmarch, 12 Allen 49; Mott *v.* Consumers Ice Co., 73 N. Y. 543; *Robinson* v. *Bealle*, 20 *Ga.* 275, 308, 309.

But it was argued that even if the bank were not liable under the common law, it is so under the statutes and jurisprudence of this State. It may be replied that the code expressly declares the common law rule as to diligence touching a gratuitous bailment. Code, §§2104, 2105; *Chattahoochee Nat. Bank* v. *Schley*, 58 *Ga.* 369. Or if there be any difference, the common law was stricter, some of the books saying that the bank must

exercise ordinary diligence in a case like this, though the weight of authority is in favor of slight diligence being sufficient. The sections of the code last cited state the law specially applicable to this case. Section 2201, which declares that the principal is bound for the care, diligence and fidelity of his agent in his business, and hence he is bound for the neglect and fraud of his agent in the transaction of such business, and section 2961, which declares that every person shall be liable for torts committed by his servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary, do not conflict with the common law, but seem to us designed especially to express it. The question, then, comes back to this, whether the theft by the cashier of a special deposit was " in the transaction of " or " in the prosecution and within the scope of " the bank's business. The authorities say *not*, and this is doubtless a right determination of the question on whom the loss ought to fall. Neither of the parties anticipated that the cashier would go wrong, and therefore their contract did not provide for such a contingency; nor is the bank responsible on the theory that it inflicted a tort by the hand of its servant. The cases cited for the defendant in error will be found upon careful examination not to conflict with the present decision.

It is complained in the motion for new trial that the court charged the jury thus : " If the bank kept this money as it kept its own, and if it was stolen by one in whom the bank reposed confidence and trust, and had reasonably and properly reposed trust and confidence, would the bank be liable ? And I am compelled to say that I believe it would; I believe the bank is liable for a theft committed by its cashier, provided he steals that which is in his custody to take care of." In view of the conclusion arrived at in discussing this the central ques-

tion of the case, the charge was error for which a new trial must be granted.

2. There was some contest during the trial over the question whether the deposit in this case was gratuitous or not. The court charged the jury as follows: "It may not be necessary to find in this particular case that there was any particular benefit to be derived by one or the other party; if you find that the bank had concluded, for reasons satisfactory to itself, to accept this class of deposits, and had been in the habit of accepting this class of deposits, then a person going to make a deposit with it is not obliged to be able to satisfactorily show to himself what benefit it would be to the bank to receive it before he makes his deposit, but he can assume that it would have been a benefit to the bank; and if you find that it ought to have been a benefit to the bank, or that the bank had given him the right to assume that it would be benefited, then the bank would be estopped from denying that in this particular instance there was less liability because in this particular instance they had failed to be benefited." This charge is complained of as error. We think the character of a particular bailment, whether gratuitous or not, is to be determined by the contract between the parties to it, and not by transactions, however numerous, between one of these parties and third persons having no relation to the case. The charge virtually declares that a person who has a habit of seeming to accommodate others shall, in any particular instance, be conclusively presumed to act for pay. This goes too far; it makes the obliging man a legal impossibility. Pay being the rule and accommodation the exception, a jury might infer the existence of some secret profit from a multiplicity of favors. But this certainly cannot be an infallible, indisputable inference. Moreover, the possibility of some undisclosed benefit is not enough to

render the bailment one for hire; there must be an understanding or arrangement, express or implied, between the parties, whereby the bailee has received or has a right to expect and demand something for his, benefit. See Code, §2103. Casual or incidental benefits which he would have to surrender at the will of the bailor, do not amount to a consideration. There must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor. The fact that the special depositor is also a general depositor in the bank is hardly sufficient, unless the retention of the general deposit account was stipulated for. So an incidental earning of fees for exchange or collection would not be a consideration, unless the depositor were obliged to allow it. Such benefits as are wholly contingent, and dependent on the pleasure of the depositor, cannot affect or determine the character of the bailment. The custom of the bank to accept special deposits does not absolutely demonstrate a general, still less a universal, receipt of consideration; and there is no reason why a bank should not be allowed to accommodate a customer, or any number of customers, in this way, without raising any equity to estop it from showing the fact of such accommodation. The. charge complained of was error. ·

It is unnecessary to discuss the remaining assignments of error, because the controlling questions have been dealt with, and on the new trial the court will have no difficulty in shaping instructions to accord with this opinion.                                    *Judgment reversed.*