S07A1271. MERLINO et al. v. CITY OF ATLANTA et al.
(657 SE2d 859)

Melton, Justice.

This dispute involves the rights and duties of property owners and the City of Atlanta ("City") with respect to an underground drainage pipe. The underground pipe traverses several lots, including lots owned by John and Melissa Merlino and Jeff and Leigh Juliano. The Julianos' property is located two lots directly downhill from the Merlinos' property. Further downhill, the underground pipe eventually empties into the City's sewer system. After the Julianos plugged the pipe at the property line between their own property and the lot that lies between their property and the Merlinos', the Merlinos experienced a series of floods on their property. The Merlinos then filed an action against the Julianos, the City, and several of their neighbors[1] for declaratory judgment regarding the existence of an implied easement that governed the rights of the parties with respect to the pipe, and for nuisance and trespass. The Merlinos also filed a petition for a writ of mandamus in an attempt to force the City to repair, restore, or maintain the underground pipe. The trial court granted summary judgment to both the Julianos and the City on all counts, and the Merlinos appeal. For the reasons that follow, we affirm the grant of summary judgment to the City, but reverse the grant of summary judgment to the Julianos on the Merlinos' claims for nuisance and trespass.

On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

---

[1] The neighbors are not involved in this appeal.

(Citation and punctuation omitted.) *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003); OCGA § 9-11-56 (c).

Viewed in the light most favorable to the Merlinos, the record reveals that in 1991, the Merlinos purchased a home in the City. In 1992, they sought a building permit for certain home renovations. The City discovered that the location of the proposed construction was directly above an underground storm-drainage pipe, and denied the permit application. After notifying the Merlinos of the pipe, the City informed the Merlinos that they could still be granted a building permit if they rerouted the pipe outside of the footprint of their proposed home expansion. The Merlinos rerouted the pipe on their own property based on plans drawn up by their own contractors, and added additional inlets to their property that allowed more storm water to drain into the pipe. The Merlinos were granted a building permit, and they completed their home renovation.

In 2001, the Julianos purchased a home two lots downhill from the Merlinos. The survey conducted by the previous owner, the survey done by the Julianos, and the title search done by the Julianos did not show the existence of an easement for a sanitary sewer line or a storm drain. Unbeknownst to the Julianos, the only record of the pipe was on a map created by the City of Atlanta Technical Services Department in May 1988, entitled "City of Atlanta, Department of Public Works, Atlanta Drainage Basin Study, Peachtree Creek Basin, Storm Drainage Inventory."[2] The Julianos first learned of the underground pipe in June 2002 when, during construction of a home addition, their contractor encountered the pipe sixteen feet below the ground while excavating the backyard. The Julianos ran a camera up the pipe and discovered that the pipe ran from their property to a manhole at the foot of the Merlinos' driveway, and then continued up the street through at least the next three lots. Storm water entered the pipe through inlets located on each of the three lots uphill from the Merlinos' lot and continued through the Merlino and Juliano properties before being deposited in the City's main sewer line.

The Julianos stopped construction and decided to try and reroute the pipe. Mr. Juliano talked with at least three City officials, one of whom informed him that the pipe was not shown as part of the City's sewer lines. The City rejected the Julianos' proposal for a permit to reroute the pipe and informed the Julianos of the City's requirements for rerouting the pipe. Mr. Juliano also talked to Mr. Merlino and Mrs.

---

[2] Even this document, however, would not have alerted the Julianos to the existence of the pipe in its rerouted state, because the document is from 1988 and the pipe was rerouted by the Merlinos four years later in 1992.

Merlino's father about the pipe issue, and about the actions that the Merlinos had taken with respect to the pipe in 1992. After no agreement could be reached between the Julianos and the Merlinos regarding what should be done about the pipe, the Julianos informed the Merlinos of their intention to plug the pipe. On July 17, 2002, the Julianos plugged the pipe.

On July 18, 2002, Mrs. Merlino reported to the City that the Julianos had plugged the pipe. On July 22, 2002, the City informed Mrs. Merlino that it was going to issue a stop work order on the Julianos' construction and require the Julianos to re-open the pipe because a City inspector believed that a builder could not cap off an underground sewer line. After initially issuing a stop work order on August 1, 2002, the City referred the matter to its Law Department, and then temporarily lifted the stop work order. The Julianos un-plugged the pipe on or about August 8, 2002, and installed a tempo-rary vertical pipe that emptied onto their own property. After install-ing the temporary pipe, however, the Julianos experienced over two feet of flooding in the excavation area of their property. In late October 2002, the Law Department informed the Julianos that the City did not have an opinion one way or another as to whether the pipe should remain open or be closed. As a result, on October 30, 2002, the Julianos re-plugged the pipe at the property line with the residence immediately uphill from them. Shortly thereafter, the Julianos completed construction of their home addition.

The Merlinos' house flooded in December 2002, and on December 16, 2002, the Merlinos sent Requests to Abate Nuisance pursuant to OCGA § 41-1-5 to the Julianos and ante litem notice to the City. In March 2003 and on May 5, 2003, the Merlinos' home flooded again. By November 20, 2003, the Merlinos' property had flooded at least nine times.[3]

1. The Merlinos contend that the underground pipe was subject to an easement that gave them water drainage rights through the Julianos' property and governed the Julianos' rights and duties with respect to the pipe. However, there is no evidence of the existence of an easement relating to the underground drainage pipe. Indeed, a bona fide purchaser "without knowledge or constructive notice of the existence of [an] easement [takes] title free from the easement, and he may assume that there is no easement except as shown of record or by open and visible indications on the land itself." *Burk v. Tyrrell*, 212 Ga. 239, 243 (3) (91 SE2d 744) (1956). See also *The Rome Gas-Light Co. v. Meyerhardt*, 61 Ga. 287 (1878). Prior to purchasing their home,

---

[3] However, according to Mr. Merlino's deposition testimony, one of the flooding incidents occurred in September 2002, which was a month prior to the Julianos plugging the pipe.

the Julianos did a title search and had a survey done of their land, neither of which revealed any easements. Moreover, there is no written record of any easement relating to the pipe,[4] nor is there anything in the record to show that there were visible indications on the Julianos' premises that would have, in the exercise of ordinary diligence, put them on notice regarding an easement for a drainage pipe running sixteen feet below their backyard.[5] See *Burk*, supra, 212 Ga. at 243 (3); *The Rome Gas-Light Co.*, supra, 61 Ga. at 290. Therefore, we affirm the trial court's grant of summary judgment to the Julianos on this claim.

2. The Merlinos argue that because the City owned or maintained dominion or control over the pipe, the City caused a nuisance by allowing the pipe to be plugged. However, there is no evidence that the City ever owned, constructed, maintained, or installed the pipe.[6] The evidence showed that the City did not own any easement relating to the underground pipe. Further, the City did not exercise dominion or control over the pipe such that a nuisance claim against it could be authorized. "[L]iability of a municipality cannot arise solely from its approval of construction projects." (Emphasis omitted.) *Fulton County v. Wheaton*, 252 Ga. 49 (1) (310 SE2d 910) (1984), overruled in part on other grounds, *DeKalb County v. Orwig*, 261 Ga. 137 (402 SE2d 513) (1991). Here, the City took no affirmative steps to repair, restore, or maintain the pipe. It merely informed the Julianos and the Merlinos that they could not receive approval for their personal home construction projects when such construction would take place directly above a storm-drainage pipe. The homeowners themselves were the ones who had to resolve any issues relating to the pipe in order to receive approval for their home renovation projects. There is no basis for holding the City liable for an alleged nuisance created by the Julianos' decision to plug the pipe when there is no evidence that the City owned the pipe or exercised direct dominion and control over it. See id. We therefore affirm the trial court's grant of summary judgment to the City on the Merlinos' nuisance claim.[7]

---

[4] Although the City included the pipe in a 1988 "Storm Drainage Inventory," there is no reference to the pipe or any easement relating to it in any Fulton County records.

[5] The existence of an openly visible manhole at the foot of the Merlinos' driveway, two houses uphill from the Julianos' property, does not support the Merlinos' claim that the Julianos were placed on inquiry notice about the existence of any easement on their own property relating to the underground pipe. A visible manhole at the foot of a home two lots uphill from the Julianos' home simply has nothing to do with whether there was evidence on the Julianos' own property relating to an easement for a pipe buried beneath their backyard.

[6] As the Merlinos concede in their brief, they do not know who installed or constructed the pipe.

[7] In this connection, the Merlinos' mandamus claim against the City must also fail. The Merlinos cannot force the City to maintain or repair a pipe that the City neither owns nor has

3. The Merlinos contend that by plugging the pipe, the Julianos created and maintained a nuisance and a trespass. Here, the record shows that the Julianos plugged the pipe knowing that it could cause water to back up and flood the Merlinos' uphill property. In fact, Mr. Juliano admitted as much in his deposition. Although it is possible that the act of plugging the pipe may not have been wrongful in itself, the potential consequence of the uphill flooding of the Merlinos' property after the pipe was plugged creates an issue of fact as to whether the Julianos can be held liable for creating a continuing nuisance. See *Rinzler v. Folsom*, 209 Ga. 549 (2) (74 SE2d 661) (1953); OCGA § 41-1-1 ("A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance."). A question of fact also remains on the issue of trespass, because taking an action that diverts excess water onto another's property can constitute a trespass. See, e.g., *Bodin v. Gill*, 216 Ga. 467 (3) (117 SE2d 325) (1960); OCGA § 51-9-1. See also *Rinzler*, supra, 209 Ga. at 552 (2) (a trespass is a direct infringement of one's right of property, whereas a nuisance is an infringement that results from an act which is not wrongful in itself but only wrongful because of the consequences which flow from it). Therefore, we reverse the trial court's grant of summary judgment to the Julianos on the Merlinos' nuisance and trespass claims.[8]

4. The Merlinos contend that the trial court erred in granting summary judgment to the Julianos on their claim for litigation expenses pursuant to OCGA § 13-6-11.[9] Such expenses are recoverable under the statute "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Id. However, where, as here, a bona fide controversy exists as to whether the Julianos had the right to plug the pipe and whether the plugging of the pipe led to flooding on the Merlinos' property, attorney fees may only be awarded under the statute where the defendant has acted in bad faith. See *Latham v.*

any proven obligation to maintain. See, e.g., *Kitchens v. Richmond County*, 271 Ga. 20 (515 SE2d 143) (1999) (mandamus unavailable absent clear legal right to relief sought or gross abuse of discretion).

[8] By this ruling, this Court in no way implies that the Julianos' act of plugging the pipe is the cause in fact of flooding on the Merlinos' property. Nor does this Court resolve any question regarding the extent to which the Julianos may or may not have been entitled to plug the pipe to prevent an alleged nuisance or trespass from the Merlinos allegedly diverting excess water onto the Julianos' property. Those matters are for the jury to resolve based on the conflicting evidence.

[9] Because, as we held in Division 2, summary judgment was properly granted to the City on the Merlinos' underlying claims, the Merlinos' claim for attorney fees with respect to the City fails as a matter of law. *Steele v. Russell*, 262 Ga. 651 (1) (424 SE2d 272) (1993).

*Faulk*, 265 Ga. 107 (2) (454 SE2d 136) (1995). Questions as to whether the defendant has acted in bad faith are generally for the jury to decide. *Forsyth County v. Martin*, 279 Ga. 215 (2) (b) (610 SE2d 512) (2005). Here, despite the fact that Mr. Juliano knew that plugging the underground pipe could lead to flooding on the Merlinos' property, the Julianos nevertheless proceeded to plug the pipe. Because this constitutes some evidence from which the jury could determine that the Julianos acted in bad faith during the transaction out of which the lawsuit arose, we must reverse the trial court's grant of summary judgment to the Julianos on the Merlinos' claim for attorney fees. *City of Gainesville v. Waters*, 258 Ga. App. 555 (574 SE2d 638) (2002) (bad faith attorney fee issue properly submitted to jury where, despite defendant's knowledge of flooding problems, defendant failed to alleviate drainage problems that led to flooding on plaintiff's property).

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED FEBRUARY 25, 2008.

*Carol V. Clark*, for appellants.
*Goodman, McGuffey, Lindsey & Johnson, James F. Cook, Jr., Fellows, Johnson & LaBriola, Henry M. Quillian III, Drew, Eckl & Farnham, Brian W. Johnson, Robert N. Godfrey, Allen, Kopet & Boyd, Matthew D. Gansereit, Buker, Jones, Morton & Haley, J. William Haley, Alston & Bird, James A. Langlais*, for appellees.