**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2018**

# In the Court of Appeals of Georgia

A18A0167. JORDAN v. MARRIOTT INTERNATIONAL, INC.
A18A0199. MARRIOTT INTERNATIONAL, INC. v. JORDAN.

RICKMAN, Judge.

After she checked out of an Atlanta hotel operated by Marriott International, Inc. and returned to her home in North Carolina, Wendy Jordan discovered that she accidentally had left valuable jewelry locked in her hotel room safe. At Jordan's request, hotel staff recovered the jewelry, but some of the jewelry later went missing from a secure area at the hotel. After Jordan sued Marriott, the trial court granted partial summary judgment in favor of Marriott, essentially holding that under the Georgia innkeeper statutes, Jordan could recover at most $1,000, well below the value of the lost jewelry, plus possible damages for bad faith. Jordan appeals and

Marriott cross appeals, each from certain aspects of the trial court's ruling. For the reasons below, we affirm the trial court's rulings with one exception.[1]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). On appeal, we construe the evidence in the light most favorable to the party opposing the motion for summary judgment, giving that party the benefit of all reasonable inferences. *Cooper Tire & Rubber Co. v. Koch*, __ Ga. __ (812 SE2d 256) (2018). Our review is de novo. *Toyo Tire N. Am. Mfg., Inc. v. Davis*, 299 Ga. 155, 161 (2) (787 SE2d 171) (2016).

So construed, the record shows that Jordan had been a regular guest at the Buckhead Marriott for at least 10 years prior to 2015. When Jordan stayed there from January 28 to January 30, 2015, she locked a bag of valuable jewelry in the safe located in her room. After departing the hotel at approximately 8:00 or 9:00 a.m. on

---

[1] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required numbers of judges, however, voted in favor of considering the case en banc.

Friday, January 30[2] and returning to her home in North Carolina, Jordan realized that she had forgotten her jewelry, and, via text message that same day, she contacted a Marriott bartender with whom she had become friends through the years. At about 6:30 p.m., Jordan texted, "Thomas!!! I left 30K worth of jewelry in our safe!!! Help me!! What do I do?!!" In response, the bartender spoke to the front desk manager, who said she would speak to the chief of loss prevention at the hotel. Shortly thereafter, the bartender learned that the jewelry had been found, and he texted to Jordan: "We have it."

The chief of loss prevention and another employee had retrieved the bag of jewelry from the room safe, and the chief logged the items electronically and took a photograph of the jewelry itself. In accordance with written hotel policy,[3] he stored the bag of jewelry in the hotel's Loss Prevention Office, which is a "secure area" accessible only by Loss Prevention officers. Loss Prevention officers were also authorized to store items in a safe deposit box located in the front office area of the

_____

[2] Jordan did not check out at the front desk. Her invoice had been placed under the door, and she simply left the room with the intent of checking out and not returning until some subsequent visit.

[3] A Marriott interrogatory response, however, stated that items with a value greater than $50 were to be "placed in the safety deposit box upstairs behind the front desk."

hotel. The decision as to where to place an item turned on several factors, including the type of the item and whether the owner would return to retrieve it. The approximately thirteen Loss Prevention officers were the only employees who had access to the Loss Prevention Office and the safe deposit boxes. Marriott hotel guests leave things at the hotel after they checkout on an almost daily basis.

Shortly after the jewelry was found, Jordan spoke via telephone to a Marriott security employee and described the jewelry that she left in the room safe; the employee confirmed that all of the jewelry had been found. Jordan declined Marriott's offered to mail the jewelry, instead stating that she would prefer to have her brother, who lives in Macon, retrieve it. The Marriott employee stated that the bag of jewelry would be kept in the "hotel safe" until that time. Jordan avers generally that she informed each Marriott employee with whom she spoke about the value of the property. In her deposition, however, Jordan admitted that in the conversation during which Marriott agreed to hold the jewelry for her, she did not inform Marriott about the value of each item or the overall value of the jewelry, nor did she provide a written list of the items. Marriott denies that it was aware of the value at the time it agreed to store the jewelry. Jordan also admits that she did not offer any specific

4

consideration to Marriott in exchange for the offer to store the jewelry in the hotel safe.

The bag of jewelry stayed in the Loss Prevention Office until the following Monday, when it was locked in a safe deposit box. At some point thereafter, Jordan arranged for the bartender to retrieve the jewelry and take it halfway to Macon to meet her brother and give him the jewelry. That event was scheduled for February 6, 2015, the first day that the bartender and Jordan's brother could meet. On Thursday, February 5, 2015, the bartender spoke to a Loss Prevention supervisor about the plan and was advised to have Jordan provide her permission for the bartender to retrieve the jewelry. On that occasion, which appears to be the first time that the bartender spoke to the supervisor about the jewelry, the bartender explained that Jordan had texted that the jewelry had a value of $30,000. The supervisor and Jordan then had a telephone conversation in which Jordan gave her permission to give the jewelry to the bartender.

The bartender returned to the Loss Prevention office on Friday February 6 and accompanied the supervisor to the safe deposit box, where he saw what appeared to be an insignificant amount and value of jewelry in the bag. The bartender then called Jordan who confirmed that some jewelry was missing, and at some point, the

5

bartender, the supervisor, and perhaps other employees, compared the jewelry to the photograph of what Marriott had found in the safe in Jordan's room and saw that much was missing. The supervisor called Jordan to obtain a full inventory of the items that should have been in the safe deposit box, and Jordan gave an approximate value of the jewelry. Although Marriott promised to send the photograph to Jordan, she never received it. The supervisor later called Jordan back and explained that Marriott would investigate what happened and report back.

A subsequent investigation showed that prior to the jewelry being moved to the safe deposit box, a Loss Prevention officer was seen on hotel security video handling the jewelry in the Loss Prevention Office, and he was suspected of having removed some of it. During later questioning, the suspect admitted that in the video he can be seen cleaning Jordan's jewelry. The suspect refused to answer further questions, and Jordan's jewelry was never recovered. The suspect was terminated when he admitted removing towels from the hotel. Whether the jewelry was in fact stolen by the suspect has not been established. On or about February 19, Jordan returned to Atlanta and made a police report.

Jordan eventually filed suit against Marriott and asserted claims of negligence per se under Georgia's innkeeper statutes, bailment, breach of contract, and attorney fees.[4] Following discovery, Marriott moved for summary judgment on all claims.

The trial court held that Jordan's claim of negligence per se under the innkeeper statutes could proceed against Marriott but that her claim was limited by those statutes to $1,000. For that claim, there remained an issue of fact as to whether Marriott exercised extraordinary diligence in storing the jewelry. The court granted summary judgment in favor of Marriott on Jordan's claims of bailment and breach of contract. And the court granted partial summary judgment on the attorney fee claim, holding that there were disputed issues of material fact as to whether Marriott acted in bad faith in its pre-litigation dealings with Jordan. Jordan appeals the rulings against her, and Marriott cross appeals from the court's failure to grant complete summary judgment in its favor on the innkeeper statute and attorney fee claims.

1. Jordan contends the trial court erred by limiting her claim of negligence per se to $1,000 under the Georgia innkeeper statutes. On cross appeal, Marriott contends the trial court erroneously applied the innkeeper statutes to the case because Jordan

_____

[4] Jordan also asserted a claim of intentional infliction of emotional distress but later withdrew that claim.

was not a guest of the hotel at the time Marriott agreed to hold the jewelry for Jordan; rather, Marriott argues that, at best, it gratuitously agreed to store the jewelry. This case requires us to determine the meaning of the various innkeeper statutes and their applicability to the facts at hand. In so doing, we construe the statutes according to their plain meaning except as further noted below. See *Georgia Dept. of Juvenile Justice v. Eller*, 338 Ga. App. 247, 248 (789 SE2d 412) (2016).

(a) We first address Marriott's argument that the innkeeper statutes govern only the relationship between the inn and a "guest," which is defined as "a person who pays a fee to the keeper of an inn for the purpose of entertainment at that inn," OCGA § 43-21-1 (1), and that Jordan was not a guest at the time that Marriott agreed to hold the jewelry for her to retrieve it. The trial court ruled on Jordan's innkeeper claim while pretermitting whether Jordan still could be considered a guest for purposes of the innkeeper statutes at the time her jewelry was entrusted to Marriott; for purposes of Jordan's bailment claim, the court held that Jordan was not a guest at that time. We hold that there is an issue of fact as to whether Jordan was a guest at the time and therefore whether the innkeeper statutes apply.

The innkeeper statutes apply only so long as the person retains his or her guest status at the inn. See *Summer v. Hyatt Corp.*, 153 Ga. App. 684, 685 (266 SE2d 333)

8

(1980) (hotel guest retained guest status while eating at hotel restaurant located on the premises and therefore hotel owed innkeeper duties); cf. *State v. Delvechio*, 301 Ga. App. 560, 563 (687 SE2d 845) (2009) (a person who obtains a hotel room with a fraudulent credit card is not a "guest" within the meaning of OCGA § 43-2-1 (1)); OCGA § 43-21-7 (innkeeper cannot charge for checking or keeping baggage "while the owner remains a guest of the house").

Under the innkeeper statutes, a person's status as a guest at the hotel terminates at the expiration of the time period agreed to by the parties and "signed or initialed by the guest." See OCGA § 43-21-3.2.[5] At that time, the innkeeper is authorized to remove a departed guest's property "to a secure place where the guest may recover his or her property without liability to the innkeeper, except for damages to or loss of

---

[5] OCGA § 43-21-3.2 provides in pertinent part as follows:
A written statement prominently setting forth in bold type the time period during which a guest may occupy an assigned room, when separately signed or initialed by the guest, is a valid nonassignable contract. At the expiration of such time period, the guest may be restrained from entering such room and any property of the guest may be removed by the innkeeper to a secure place where the guest may recover his or her property without liability to the innkeeper, except for damages to or loss of such property attributable to its removal.

9

such property attributable to its removal." Id. Our Supreme Court has held also that when a departing guest has left baggage with an innkeeper with the innkeeper's consent, the innkeeper is still liable for it as an innkeeper "for a reasonable time, to be estimated according to the circumstances of the case." *Adams v. Clem*, 41 Ga. 65, 67 (1870).[6]

Here, there is an issue of fact as to whether Jordan could still be considered a guest of the hotel for the purposes of the innkeeper statutes at the time that she entrusted the jewelry to Marriott. First, Marriott failed to meet its burden of showing as a matter of undisputed fact exactly when Jordan ceased to be a guest of the hotel. There are no check-in documents "signed or initialed by the guest" in the record. Second, a jury could find that under the circumstances it is reasonable to conclude that Jordan should still have been considered a guest for the purposes of the innkeeper statutes at the time that she entrusted the jewelry to Marriott. Thus, the trial court correctly refused to find as a matter of law that Jordan was no longer a guest for the purposes of the innkeeper statutes; Marriott's relevant enumeration of error is therefore without merit. But, for the same reason, the trial court erred when it

_____

[6] We find no support, however, for the proposition that, for the purposes of the innkeeper statutes, Jordan maintained her guest status beyond that described herein by the mere fact that Jordan was a repeat guest of the Marriott.

10

determined as a matter of law that Jordan was not a guest for purposes of addressing Jordan's bailment claim.

(b) We nevertheless agree with the trial court's determination that if Jordan was a guest as that term is defined in the innkeeper statutes at the time she asked Marriott to keep her jewelry, her claim under the innkeeper statutes is limited to $1,000.

"At common law an innkeeper was an insurer of the goods of his guest." *Jones v. Savannah Hotel Co.*, 141 Ga. 530 (81 SE 874) (1914). The innkeeper statutes, OCGA § 43-21-1 et seq., slightly altered this duty with a requirement that an innkeeper "exercise extraordinary diligence in preserving the property entrusted to his care by his guests." OCGA § 43-21-8; see *Murchison v. Sergent*, 69 Ga. 206, 210 (1883) ("It may be well to say, however, that at common law the rule was perhaps more stringent, yet substantially is very much the same."); OCGA § 43-21-4 ("An innkeeper is a depository for hire[7]; however, given the nature of his business, his liability is governed by more stringent rules, as are set out in [the innkeeper statutes]."). Thus, under the current innkeeper statutes, as stated in the two statutes upon which Jordan relies, "if the loss of such entrusted property occurs through theft

---

[7] A depository for hire means "a depository who receives or expects a reward or hire for undertaking to keep chattels for another." OCGA § 44-12-90.

11

and if the guest has complied with all reasonable rules of the inn, the innkeeper shall be liable as an insurer of the stolen property," OCGA § 43-21-8, and "it will be presumed that the innkeeper failed to exercise extraordinary diligence with regard to [loss of property entrusted by a guest to an innkeeper]." OCGA § 43-21-12.

The innkeeper statutes also provide, however, that "an innkeeper may relieve himself from responsibility for valuable articles belonging to his guest" under various circumstances. *Jones*, 141 Ga. at 530; see OCGA §§ 43-21-10 through 43-21-12.[8] The liability-limiting aspects of these three statutes provide that (1) "[n]o guest shall recover from the innkeeper more than $750.00 for loss of valuable articles deposited with the innkeeper for safekeeping" without a receipt for the articles from the innkeeper, see OCGA § 43-21-10; (2) no innkeeper shall be responsible in excess of $1,000 for the loss or theft of "any valuables, including cash, jewelry, etc., which are contained in a package, box, bag, or other container left with the hotel proprietor or innkeeper to be placed in the safe or other depository of the hotel or inn" without a "written contract" for a greater liability, see OCGA § 43-21-11 (a); and (3) other than for "valuable articles which must be delivered to the innkeeper to be deposited in a

---

[8] Because the innkeeper statutes that limit an innkeeper's duty are in derogation of the common law, they must be strictly construed against the innkeeper. See *Kates v. Brunswick Motel Enterprises*, 187 Ga. App. 875, 876 (371 SE2d 686) (1988).

12

safe or other place of deposit," no innkeeper shall be responsible in excess of $1,000 for the "loss of or injury to" a guest's personal property entrusted to the innkeeper unless the guest shall "notify the innkeeper in writing" that the value of the property exceeds $ 1,000.00 and "upon demand of the innkeeper, furnish the innkeeper a list or schedule of the same, with the value thereof," OCGA § 43-21-12. These three statutes must be read in pari materia, which "means simply that they must be harmonized, and may not be read in a vacuum." *Kates v. Brunswick Motel Enterprises*, 187 Ga. App. 875, 876 (371 SE2d 686) (1988).

Of these statutes, OCGA § 43-21-11[9] is the most specific and most applicable to the facts of this case in that it expressly pertains to theft of jewelry, contained in

---

[9] In full, OCGA § 43-21-11 (a) provides as follows:

No hotel, apartment hotel, or innkeeper shall be responsible in an amount in excess of $1,000.00 for the loss or theft of any valuables, including cash, jewelry, etc., which are contained in a package, box, bag, or other container left with the hotel proprietor or innkeeper to be placed in the safe or other depository of the hotel or inn, provided that the liability of the hotel or innkeeper may be increased to an amount in excess of $1,000.00 by a written contract entered into between the parties providing a greater liability; provided, further, that the contract shall not call for any additional cost to the guest.

13

a bag, that is left with the innkeeper, and placed in a safe or other hotel depository. That statute therefore controls Jordan's innkeeper claim. See *Kates*, 187 Ga. App. at 876 (OCGA § 43-21-11 governs the limitation on the liability of an innkeeper for valuables which are deposited in the safe or other depository of the hotel); see also *Vines v. State*, 269 Ga. 438, 440 (499 SE2d 630) (1998) ("For purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent."). That the limiting provision of OCGA § 43-21-12 is not applicable to the present facts is shown also by language therein stating that it applies to "other than valuable articles which must be delivered to the innkeeper to be deposited in a safe or other place of deposit," which clearly references the type of valuables governed by OCGA § 43-21-11.[10]

Under OCGA § 43-21-11 (a), the innkeeper is liable for amounts greater than $1,000 for the loss or theft of any valuables only if the parties enter into "a written contract . . . providing a greater liability," OCGA § 43-21-11 (a), which Jordan and Marriott simply did not do. In short, when Jordan declined to have Marriott mail the

---

[10] Accordingly, the factual issues regarding whether Jordan successfully notified Marriott in writing via her initial text to the bartender that her jewelry was worth $30,000 and whether the bartender could be considered Marriott's agent for purposes of receiving such notice are not relevant in that those issues pertain only to the limitation on liability found in OCGA § 43-21-12.

14

jewelry to her and requested that Marriott hold the bag of jewelry for her without entering into a written contract providing a greater liability, Marriott's potential liability under the innkeeper statutes for the theft of Jordan's jewelry was limited to $1,000, as the trial court correctly held. The trial court also correctly held that there is an issue of fact as to whether Marriott exercised extraordinary diligence[11] in safeguarding Jordan's jewelry.

2. With regard to Jordan's bailment[12] claim, "[a]ll bailees are required to exercise care and diligence to protect the thing bailed and to keep it safe." OCGA § 44-12-43. But "[d]ifferent degrees of diligence are required according to the nature of the bailments." Id. More specifically,

---

[11] OCGA § 51-1-3 provides that
In general, extraordinary diligence is that extreme care and caution which very prudent and thoughtful persons exercise under the same or similar circumstances. As applied to the preservation of property, the term "extraordinary diligence" means that extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property. The absence of such extraordinary diligence is termed slight negligence.

[12] "A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." OCGA § 44-12-40.

15

If the bailment is for the benefit exclusively of the bailee [here, Marriott], he must use extraordinary care; if for the mutual benefit of the parties, ordinary care; and if for the exclusive benefit of the bailor [here, Jordan], slight care will suffice.

*Merchants' Nat. Bank v. Guilmartin*, 88 Ga. 797, 799 (15 SE 831) (1892); see also *Gooden v. Day's Inn*, 196 Ga. App. 324, 326 (2) (395 SE2d 876) (1990) (same) (physical precedent only). Thus, in the event that the innkeeper statutes do not apply, Marriott could be required to show either ordinary diligence or only slight diligence in safeguarding Jordan's jewelry, depending on whether the bailment was for the mutual benefit of the parties or merely for Jordan's benefit. This question is normally one for the court. See *Atlanta Limousine Airport Servs. v. Rinker*, 160 Ga. App. 494, 495 (287 SE2d 395) (1981).

Jordan argues that Marriott received some consideration or benefit for safeguarding her jewelry in that it had an interest in accommodating a regular customer, such as she, or that it benefitted from accommodating all similar customers who accidentally leave their belongings at a hotel after departing. Our Supreme Court long ago held that "the character of a particular bailment, whether gratuitous or not, is to be determined by the contract between the parties to it," and "the possibility of some undisclosed benefit is not enough to render the bailment one for hire; there must

16

be an understanding or arrangement, express or implied, between the parties, whereby the bailee has received, or has a right to expect and demand, something for his benefit." *Guilmartin*, 88 Ga. at 804-805 (2); see also OCGA § 44-12-90 (compare "depository for hire," which means "a depository who receives or expects a reward or hire for undertaking to keep chattels for another" with "naked deposit" which means "an undertaking whereby a depository keeps chattels for another gratuitously"). Further, "[t]here must be a compensation of some sort actually contemplated in the contract and bargained away by the bailor. The fact that the special depositor is also a [regular customer] is hardly sufficient, unless the retention of the [regular business] was stipulated for." *Guilmartin*, 88 Ga. at 805 (2).

Here, there is no evidence of a disclosed benefit flowing to Marriott in connection with its agreement to safeguard Jordan's jewelry until her brother could retrieve it. And Jordan admitted that at the time she declined to have Marriott mail the jewelry to her, she did not offer any specific consideration to Marriott in exchange for the offer to store the jewelry in the hotel safe.

We therefore agree with the trial court that "Marriott gratuitously agreed to store her jewelry when Jordan refused to allow [Marriott] to mail it to her[.]" Accordingly, Marriott was required to show only slight diligence for the purposes of

17

Jordan's bailment claim. We also agree with the trial court that Marriott showed slight diligence[13] as a matter of law, given that the bag of jewelry was locked in the Loss Prevention Office, and that there is no indication Marriott was aware that the theft suspect could not be trusted. Cf. *Gooden*, 196 Ga. App. at 326 (2) (hotel employees acted with ordinary care and diligence as a matter of law where when they took a bag of money from guest's room for safekeeping and turned it over to a trusted supervisor, who ultimately absconded with the money). The trial court therefore did not err in granting summary judgment on Jordan's claim of bailment.

3. Jordan also asserted a claim for breach of contract. She alleged that after the jewelry was recovered from her hotel room safe, Marriott entered into a contract with her when it promised that it would keep her jewelry securely locked in the hotel safe. But for essentially the same reasons stated in Division 2, we affirm the trial court's

---

[13] Slight diligence is defined, in general, as
that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances. As applied to the preservation of property, the term "slight diligence" means that care which every man of common sense, however inattentive he may be, takes of his own property.

OCGA § 51-1-4.

18

ruling granting partial summary judgment on that claim. See OCGA § 13-3-42 (a) ("(a) To constitute consideration, a performance or a return promise must be bargained for by the parties to a contract. (b) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."). Here, there is no evidence that the parties bargained for Marriott's agreement to safeguard Jordan's jewelry, i.e., no evidence that Marriott sought or received consideration in exchange for the promise to hold Jordan's jewelry, and therefore no contract. The trial court therefore correctly granted summary judgment in favor of Marriott on Jordan's breach of contract claim.

4. Finally, Marriott contends the trial court erred in ruling that there was an issue of fact as to whether Marriott acted in bad faith in its pre-litigation dealings with Jordan.

In her complaint, Jordan sought attorney fees under OCGA § 13-6-11 for bad faith,[14] which requires proof of bad faith in the transaction out of which the lawsuit arose. See *Merlino v. City of Atlanta*, 283 Ga. 186, 191 (4) (657 SE2d 859) (2008). "Questions as to whether the defendant has acted in bad faith are generally for the

---

[14] Jordan also sought fees for stubborn litigiousness, which the trial court dismissed on summary judgment. Jordan has not appealed that ruling.

19

jury to decide." Id. Here, evidence was presented to show that Marriott made little or no attempt to contact law enforcement after discovering a possible theft for almost two weeks thereafter and required Jordan to file her own police report; that Marriott refused to return Jordan's remaining jewelry when she came to Atlanta on or about February 19, 2015, and only later mailed it to her; and that Marriott management refused to meet with her when she visited on February 19. Thus there was some evidence of bad faith in Marriott's dealings with Jordan, and the trial court correctly denied summary judgment on this count.

In conclusion, although we disagree with the trial court's findings regarding whether Jordan remained a guest for some period of time after she departed Atlanta on January 30, 2015, the trial court correctly limited any claim under the innkeeper statutes to $1,000, correctly found an issue of fact as to whether Marriott had exercised extraordinary care if it was still in an innkeeper-guest relation with Jordan, correctly granted summary judgment in favor of Marriott on Jordan's claims of bailment and breach of contract, and correctly found an issue of fact remaining on bad

faith. We therefore affirm the trial court's ruling with the exception that we hold that there remains an issue of fact for the jury on Jordan's status as a guest under the innkeeper statutes.

*Judgment affirmed in part and reversed in part. Ray, J., concurs in the judgment only. McFadden, P. J., concurs fully in Division 4, in the judgment only in Division 1 (a), and dissents in Divisions 1(b), 2, and 3.*

*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).

# In the Court of Appeals of Georgia

A18A0167, A18A0199. JORDAN v. MARRIOTT INTERNATIONAL, INC.; and vice versa.

McFADDEN, Presiding Judge, concurring in part and dissenting in part.

Wendy Jordan asserted three alternative claims against Marriott to recover the value of the stolen jewelry she had entrusted to Marriott: a claim under two provisions of the innkeeper statutes, OCGA §§ 42-21-8 and 42-21-12; a claim for breach of bailment; and a claim for breach of contract. She also sought attorney fees for, among other things, bad faith. I would hold the evidence sufficient to go

2

to a jury on all three of those claims and that the applicability of a $1,000 liability limit under the innkeeper statutes is likewise a jury question.

The trial court denied Marriott's motion for summary judgment on the innkeeper-statutes claim, but limited Marriott's liability on that claim to $1,000. He granted summary judgment to Marriott on the claims for breach of bailment, breach of contract, and attorney fees based on stubborn litigiousness. And he denied summary judgment to Marriott on the bad faith attorney fee claim.

The majority would affirm the denial of summary judgment on the innkeeper statutes and bad faith attorney fee claims and the grant of summary judgment on the breach of bailment and breach of contract claims. I agree with the majority in two respects: that Marriott is not entitled to summary judgment on the negligence per se claim or the claim for attorney fees based on bad faith. But I disagree with the majority's holding that the negligence per se claim must be capped at $1,000. And I disagree with the majority that Marriott is entitled to summary judgment on the breach of bailment and breach of contract claims. So I respectfully dissent in part.

1. *Innkeeper statues.*

"At common law an innkeeper was an insurer of the goods of his guest." *Jones v. Savannah Hotel Co.*, 141 Ga. 530 (81 SE 874) (1914). The innkeeper statutes were enacted "to relax the stringent rule of the common law, so as to permit the innkeeper to protect himself against liability under certain circumstances." Id. I would hold that it is for a jury to decide whether those circumstances obtain here.

So I agree with the majority that Jordan's claim under the innkeeper statutes should proceed to a jury (although I concur in judgment only in Division 1 (a) because I do not agree with the emphasis the majority places on the evidence of a lack of a formal check-out). I disagree, however, that Jordan's potential recovery on that claim should be capped at $1,000, so I dissent to Division 1 (b).

Jordan brought her innkeeper statutes claim under two provisions of Georgia's innkeeper statutes, OCGA §§ 42-21-8 and 42-21-12. Those Code sections concern the liability of a hotel[1] for property entrusted to it by a guest. OCGA § 42-21-8 provides: "An innkeeper shall exercise extraordinary diligence in preserving the property entrusted to his care by his guests, provided that, if the

_____

[1] A hotel such as Marriott falls within the definition of an "inn." OCGA § 43-21-1 (2).

4

loss of such entrusted property occurs through theft and if the guest has complied with all reasonable rules of the inn, the innkeeper shall be liable as an insurer of the stolen property." And OCGA § 43-21-12 sets out the circumstances when that liability is limited to $1,000:

> In case of loss of property entrusted by a guest to an innkeeper, it will be presumed that the innkeeper failed to exercise extraordinary diligence with regard to such property. . . . The liability of the innkeeper for loss or or injury to personal property placed by any guest under the innkeeper's care, other than valuable articles which must be delivered to the innkeeper to be deposited in a safe or other place of deposit, shall not exceed the sum of $1,000.00, provided that any guest may, at any time before loss, damage or destruction of the guest's property, notify the innkeeper in writing that the guest's property exceeds in value the sum of $1,000.00 and shall, upon demand of the innkeeper, furnish the innkeeper with a list or schedule of the same, with the value thereof, in which case the innkeeper shall be liable for the full value of such property in case of loss, damage, or destruction because of negligence on the innkeeper's part[.]

So the plain language of OCGA § 43-21-12 provides that an innkeeper which fails to exercise extraordinary diligence with regard to property entrusted to its care, as required by OCGA § 43-21-8, may be liable to a guest for the loss of that property in an amount exceeding $1,000 if: (1) the property did not fall within

5

the exception pertaining to valuables that must be delivered to the innkeeper; (2) the guest notified the innkeeper in writing, before the loss, that the property was worth more than $1,000; and (3) the guest, if asked, provided the innkeeper with a list or schedule of the property and its value. As detailed below, the facts viewed in the light most favorable to Jordan show that these three prerequisites for liability exceeding $1,000 were met. I address each of these prerequisites in turn.

(a) *Exception for valuables that must be deposited with innkeeper.*

OCGA § 43-21-12 excepts from its provisions situations in which the property at issue was a "valuable article[ ] which *must* be delivered to the innkeeper to be deposited in a safe or other place of deposit[.]" (Emphasis supplied.) The majority finds that Jordan's jewelry fell within this exception. I disagree.

Reading the innkeeper liability statutes in pari materia, and construing them to give meaning to all the terms therein, see *Arby's Restaurant Group v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012), the exception in OCGA § 43-21-12 refers to other Code sections authorizing an innkeeper to require valuables to be deposited in a safe or other place of deposit provided by the innkeeper and

6

establishing limits to the innkeeper's liability for them. OCGA § 43-21-10 provides:

> The innkeeper may provide a safe or other place of deposit for valuable articles and, by posting a notice thereof, may require guests of the innkeeper to place such valuable articles therein or the innkeeper shall be relieved from responsibility for those articles. For all valuable articles placed by a guest with an innkeeper for safekeeping, the innkeeper shall give a receipt therefore to evidence the face of such deposit.

If the guest does not possess the receipt for articles claimed to have been lost, the innkeeper's liability is limited to $750. Id. And OCGA § 43-21-11 provides that if the valuables deposited with the innkeeper are in a container, the innkeeper's liability is limited to $1,000 unless the guest and the innkeeper contract in writing for a higher amount. Here, instead of providing a common safe or other place of deposit so that guests could deliver valuables to the innkeeper for safekeeping, Marriot provided an individual safe for each room; and Jordan put her jewelry in the safe provided to her.

While OCGA § 43-21-11 is not expressly limited to valuables that must be delivered to the innkeeper pursuant to OCGA § 43-21-10, our rules of statutory interpretation require that it be construed to be so limited. Otherwise, OCGA § 43-

7

21-11 would be an additional exception to OCGA § 43-21-12 not contained in that Code section's language. Reading an additional exception into OCGA § 43-21-12 goes against our obligation to strictly construe that Code section, as it is a statute in derogation of common law. See generally *Couch v. Red Roof Inns*, 291 Ga. 359, 364 (724 SE2d 378) (2012) (statutes in derogation of common law must be strictly construed).

So the exception to OCGA § 43-21-12 for "valuable articles which must be delivered to the innkeeper to be deposited in a safe or other place of deposit" does not apply to the facts of this case, viewed in the light most favorable to Jordan. Jordan initially placed her jewelry in her hotel room safe, consistent with the requirement of OCGA § 43-21-10. Employees of Marriott removed the jewelry from that safe before its loss. Marriott employees also removed the jewelry from its bag and inventoried the jewelry before its loss, meaning that Marriott knew what was in the bag. After inventorying the jewelry, Marriott did not immediately place it in a safe, as Marriott had told Jordon it would do. Instead, for several days Marriott left the jewelry in a locked office that was accessible to a number of Marriott employees. In other words, Marriott did not treat the jewelry as a deposit of valuables under OCGA § 43-21-10 or OCGA § 43-21-11. Moreover, at the time

8

of the loss, Jordan was under no obligation to deliver the jewelry to Marriott pursuant to OCGA § 43-21-10. She could have made another arrangement for the jewelry.

Given these facts, the first prerequisite for liability exceeding $1,000 under OCGA § 43-21-12 was met: the jewelry did not fall within the exception pertaining to valuables that must be delivered to the innkeeper.

(b) *Notification in writing.*

Viewed most favorably to Jordan, the evidence showed that she sent a text message to a Marriott employee stating that the jewelry she had left in her room safe had a value exceeding $1000. The Marriott employee immediately shared this information with a Marriott manager, and Marriott acted on the information. This occurred before the jewelry was lost. A jury could find from these facts that Jordan met the written notification requirement of OCGA § 43-21-12. See generally *Pierce v. State*, 302 Ga. 389, 397-398 (2) (b) (807 SE2d 425) (2017) (treating text messages as writings in analyzing application of best evidence rule).

(c) *List or schedule of property and value.*

Finally, from the evidence, a jury could conclude that Marriott did not demand that Jordan furnish it with a list or schedule of the jewelry and its value.

9

Consequently, Jordan was not required to provide that information to recover more than $1,000 under OCGA § 43-21-12.

2. *Bailment.*

I would reverse the trial court's grant of summary judgment as to Jordan's claim for bailment, so I dissent to Division 2. Because it is undisputed that some of Jordan's jewelry was lost, Marriott as the bailee bears the burden of proving that it satisfied its duty of care. OCGA § 44-12-44. That duty, for purposes of a defense motion for summary judgment, was one of ordinary care because the evidence, viewed most favorably to Jordan, supports a finding that the bailment benefitted both parties. And there was evidence from which a jury could find that Marriott breached its duty of care.

(a) *Evidence of mutual benefit supporting duty of ordinary care.*

As the majority notes, our Code provides that "[d]ifferent degrees of diligence are required [of a bailee] according to the nature of the bailments[,]" OCGA § 44-12-43, and if the bailment is for the mutual benefit of the parties, the bailee must use ordinary care. See *Merchants' Nat. Bank of Savannah v. Guilmartin*, 88 Ga. 797, 799 (15 SE 831) (1892). While the "degree of negligence required to impose liability upon a bailee is generally a question of law to be

10

determined by the court[,]" *Atlanta Limousine Airport Servs. v. Rinker*, 160 Ga. App. 494, 495 (1) (287 SE2d 395) (1981) (citation omitted), the evidence in this case, viewed most favorably to Jordan, gives rise to a question of fact as to whether Marriott received a benefit from agreeing to take Jordan's jewelry into safekeeping. There is evidence that Marriott benefitted from the bailment in the form of good will, both in its frequent guest, Jordan, and in the broader universe of its other guests and potential guests. See *Electro-Medical Devices v. Urban Medical Servs.*, 140 Ga. App. 776, 777-778 (1) (232 SE2d 106) (1976) (evidence of good will flowing to bailee can support finding of mutual benefit in bailment). Certainly, a jury could conclude that Marriott would not have been willing to enter into the bailment with Jordan concerning her jewelry if she had been a stranger who walked in from the street, rather than a hotel guest.

(b) *Evidence of breach of duty of ordinary care.*

There is evidence that for several days Marriott left the jewelry in an office to which a number of employees had access, and that this act violated Marriott's policy of placing items left by guests in a safe deposit box if the items had a value greater than $50. This evidence created a genuine issue of material fact regarding whether Marriott breached its duty of ordinary care to Jordan.

11

3. *Breach of contract.*

Finally, I would reverse the trial court's grant of summary judgment to Marriott on Jordan's contract claim, so I dissent to Division 3. Any benefit accruing to the promisor constitutes consideration. See *Pepsi Cola Bottling Co. v. First Nat. Bank*, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981). The good will Marriott maintained by agreeing to keep the jewelry safe, discussed above, was consideration for that agreement. See *Speir v. Nicholson*, 202 Ga. App. 405, 408 (2) (414 SE2d 533) (1992) (rejecting party's claim of failure of consideration because party received good will, among other things). And "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44 (a).