**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 10, 2020**

# In the Court of Appeals of Georgia

 A19A1737. ROUSE v. CITY OF ATLANTA.

MILLER, Presiding Judge.

This appeal involves Ivan Rouse's lawsuit against the City of Atlanta, ("the City"), after a sewage pipe was discovered beneath his property which drastically reduced the value of his property and subjected it to demolition. Rouse appeals from the trial court's order granting the City's motion for summary judgment and denying his motion for summary judgment. Rouse argues that the trial court erred because (1) the facts failed to show that the portion of his property traversed by a sewage pipe had been dedicated to the City; and (2) the facts of the case showed that he was entitled to summary judgment on his trespass, nuisance, and inverse condemnation claims. For the reasons that follow, we reverse the trial court's order granting the City's

motion for summary judgment, but we affirm the trial court's order denying Rouse's motion for summary judgment.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We use a de novo standard of review on appeal from a grant [or denial] of summary judgment, and view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant. In applying this standard to the facts of this case, we must bear in mind that questions of dedication and acceptance should ordinarily be resolved by a jury.

(Citations omitted.) *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (1) (690 SE2d 395) (2010).

So viewed, the record shows that on November 14, 2012, Rouse purchased property on Connally Street in Atlanta, which included a residential home that was built in 2004. At the time Rouse purchased the property, there were no visible signs that an underground sewage pipe traversed the property. In the chain of title to Rouse's property, there was no recorded easement in favor of the City for a sewage pipe, and the property's title commitments also did not reveal the presence of a sewage pipe. A survey of the property, however, cautioned that the survey did not

2

address matters such as easements, underground utilities, and structures that may burden the property.

In 2017, Rouse contracted to sell the property for $380,000 and scheduled the closing for the property in April 2017. During the closing process, the prospective buyer discovered an 84-inch by 60-inch egg-shaped pipe between 17 and 30 feet below Rouse's property that the City was using. According to Rouse, the sewage pipe, which was potentially decomposed, had rendered the property unmarketable and posed significant structural danger to the residence on the property. Rouse contacted the City about the sewage pipe, but they were unable to resolve their dispute concerning the sewage pipe, and the contract for the sale of the property was terminated. Additionally, the discovery of the sewage pipe decreased the value of the property from $380,000 to $10,000 because zoning regulations for the City do not permit development above sewer lines. As a result, Rouse's residence may therefore be subject to razing.

Rouse filed the instant action against the City, asserting claims for trespass, nuisance, and taking and inverse condemnation, and he also requested special damages and attorney fees under OCGA § 13-6-11. Rouse subsequently filed a motion for summary judgment, arguing that there was no easement in the chain of

3

title to permit the sewage pipe to traverse his property, that the facts of the case did not give rise to a prescriptive easement or dedication, and, alternatively, that he should be awarded compensation for the taking of his property. The City also filed a motion for summary judgment, arguing that the City had continuously inspected, maintained, and repaired the sewage pipe below Rouse's property since 1896 and thus the portion of Rouse's land traversed by the sewage pipe had been impliedly dedicated to the City. The trial court granted the City's motion for summary judgment and denied Rouse's motion for summary judgment. This appeal followed.

1. First, Rouse argues that the trial court erred by granting the City's motion for summary judgement because the facts failed to show that the portion of his property traversed by the sewage pipe had been dedicated to the City. We agree.

"Dedication is the setting aside of land by the owner for a public use." (Citation omitted.) *Lowry v. Rosenfeld*, 213 Ga. 60, 63 (1) (96 SE2d 581) (1957). OCGA § 44-5-230 provides:

> After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes.

4

"To prove a dedication of land to public use, there must be an offer, either express or implied, by the owner of the land, and an acceptance, either express or implied, by the appropriate public authorities or the general public." (Citation omitted.) *Kaplan*, supra, 286 Ga. at 560 (2). Where a dedication has been established, the "dedication for such purpose is, of course, binding on the plaintiff as a privy in title of the dedicator." (Citation omitted.) *Lowry*, supra, 213 Ga. at 63 (1).

> Intention to dedicate to public use need not be shown by express declaration and may even be inferred from the owner's acquiescence in the use of the property by the public, but a dedication is not complete until both the intention to dedicate and acceptance by the public are shown. . . .

(Citation omitted.) *Johnson & Harber Constr. Co. v. Bing*, 220 Ga. App. 179, 181 (2) (469 SE2d 697) (1996). See also *Postnieks v. Chick-fil-A, Inc.*, 285 Ga. App. 724, 728 (2) (647 SE2d 281) (2007) ("There is no particular form of making a dedication. It may be done in writing, or by parol; or it may be inferred from the owner's acts, or implied, in certain cases, from long use.") (citation omitted). "Acceptance of a dedication may be shown by any act of a governmental entity treating a structure as its own." (Citation omitted.) *Kaplan*, supra, 286 Ga. at 561 (3). See also *Teague v.*

5

*City of Canton*, 267 Ga. 679, 681 (3) (482 SE2d 237) (1997) ("While working or maintaining the property by the legally constituted authority is the usual method of manifesting acceptance by the governmental entity, it is the government's exercise of dominion and control of the subject of the express offer of dedication which indicates acceptance of the dedication.") (citations omitted). "The burden is on the party who relies on a dedication to prove the nature, boundaries and extent of the dedication." (Citation omitted.) *Cobb County v. Crew*, 267 Ga. 525, 528 (1) (481 SE2d 806) (1997).

Here, the record shows that the sewage pipe, which is located 17 feet below the surface of Rouse's property, was constructed in the late 1800s and is actively being used by the City as part of the Connally Street trunk system. The record is unclear, however, whether the property owner at the time of the construction constructed the pipe on the property for his or her own use or gave the City permission to construct the pipe for its use, and there is no recorded easement in favor of the City for the sewage pipe in the chain of title to Rouse's property. Moreover, although the City argues that the prior owner offered the land for the City's use, there is nothing in the record showing even an inferred intent by the prior owner to offer the land to the City. Indeed, the City conceded below and admits in its brief to this Court that it is

6

unknown whether the property owner constructed the pipe on the property or allowed the City to construct the pipe on the property. Additionally, the only evidence in the record purportedly showing the City's exercise of dominion and control over the sewage pipe is a single inspection of the pipe which was conducted in 2011.

Consequently, we conclude that the City has not met its burden of showing that the land traversed by the sewage pipe had been dedicated to the City. Although the City is actively using the sewage pipe, "[w]hen . . . an implied dedication is claimed, the facts relied upon must be such as to *clearly indicate* a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use." (Citation and punctuation omitted; emphasis supplied.) *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 170 (1) (537 SE2d 356) (2000). See also *Lines v. State*, 245 Ga. 390, 396 (7) (264 SE2d 891) (1980) ("The mere use of one's property by a small portion of the public, even for an extended period of time, will not amount to a dedication of the property to a public use. . . .") (citations omitted); *Johnson & Harber Constr. Co.*, supra, 220 Ga. App. at 181 (2) ("[A] dedication is not complete until both the intention to dedicate and acceptance by the public are shown[.]"). Additionally, to the extent that the City argues that the prior owner

7

acquiesced to the City's use of the pipe, there is no evidence in the record to support this contention.

The City argues that it accepted a supposed offer to dedicate because it inspected the pipe in 2011 and added cementitious lining to the pipe. These arguments, however, are unavailing. Even assuming the existence of such an offer, the City's single inspection of the pipe in the pipe's 100-year existence is insufficient to show acceptance of the offer to dedicate. See *Kaplan*, supra, 286 Ga. at 561 (3) (holding that the municipality's actions of investigating and photographing a drainage pipe failed to show an exercise of dominion and control over the pipe which constituted acceptance of the dedication). As to the City's contention that it added a cementitious lining to the sewage pipe which "is consistent with a method employed in the late 1980s and early 1990s to rehabilitate older lines[,]" this argument does not find support in the record. There is no evidence in the record to show that the City, as opposed to the property owner, added the cementitious lining to the sewage pipe. Moreover, the City appears to make an inference that the presence of the cementitious lining in the sewage pipe indicates that the City rehabilitated the sewage pipe. The record is completely silent, however, as to whether the method of adding cementitious lining to sewage pipes was used solely by the City to rehabilitate sewage pipes or

8

whether the method was also used by property owners in rehabilitating sewage pipes. Furthermore, the City's inclusion of the sewage pipe in its sewer system map is also insufficient to show dominion and control over the pipe to constitute an acceptance of the dedication offer. See *Merlino v. City of Atlanta*, 283 Ga. 186, 187-189 (1) - (2) (657 SE2d 859) (2008) (holding that the city did not exercise dominion and control of a drainage pipe despite the fact that the city listed the pipe on its inventory map). For these reasons, we conclude that the City failed to establish, as a matter of law, that the land traversed by the sewage pipe had been dedicated to the City and that genuine issues of material fact remain as to this issue. Compare *Teague*, supra, 267 Ga. at 681 (3) (holding that the city impliedly accepted the offer to dedicate a sewer system by assessing usage fees, accepting sewage tap-on fees from lot owners, and assuring the lot owners that it would continue to maintain the system). Accordingly, the trial court erred by granting the City's motion for summary judgment.

2. Next, Rouse argues that the trial court erred by denying his motion for summary judgment on his trespass, nuisance, inverse condemnation, and attorney fees claims. We disagree.

*(a) Trespass*

9

"A trespass is any wrongful, continuing interference with a right to the exclusive use and benefit of a property right." *Lanier v. Burnette*, 245 Ga. App. 566, 570 (3) (538 SE2d 476) (2000). "[T]he act of trespass must have been a voluntary, intentional act in that it intended the immediate consequences of the act, causing the trespass or invasion, i.e., an intended act as opposed to a negligent act." Id. Furthermore, "[t]o maintain an action for trespass or injury to realty, it is essential that the plaintiff show either that he was the true owner with legal title or was in possession at the time of the trespass." (Citation and punctuation omitted.) *Brown Investment Group, LLC v. Mayor and Aldermen of City of Savannah*, 303 Ga. App. 885, 886 (695 SE2d 331) (2010).

Here, the City of Atlanta admitted that it uses the pipe on Rouse's property to process storm water and sewage. As stated in Division 1, however, a fact issue remains as to whether the property had been dedicated to the City for its use. Therefore, we cannot hold, as a matter of law, that the City is wrongfully interfering with Rouse's right to the exclusive use and benefit of a property right. Accordingly, we affirm the trial court's order denying Rouse summary judgment on his trespass claim.

*(b) Nuisance*

10

"[A] municipality, whether exercising its governmental or ministerial functions, is liable for damages resulting from operating or maintaining a nuisance." (Citation omitted.) *Atkinson v. City of Atlanta*, 325 Ga. App. 70, 73 (752 SE2d 130) (2013). A municipality may be liable for nuisance where it negligently constructs or undertakes to maintain a sewer or drainage system which damages or inconveniences the property. (Citation omitted.) *City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 886 (1) (a) (663 SE2d 379) (2008).

> To state a claim of nuisance against a municipality, a plaintiff must establish that (1) the city's conduct was egregious enough to exceed mere negligence, (2) the resulting continuous or repetitious dangerous condition was of some duration, and (3) the city failed to correct the danger within a reasonable time after acquiring knowledge of the defect or dangerous condition.

(Citation omitted.) *City of Atlanta v. Landmark Environmental Indus., Inc.*, 272 Ga. App. 732, 733 (1) (613 SE2d 131) (2005). "[T]he exercise of dominion or control over the property causing the harm is sufficient to establish nuisance liability." *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592 (1) (a) (552 SE2d 536) (2001). Mere use, however, is insufficient to show an exercise of dominion and control for purposes of a nuisance claim. See *Merlino*, supra, 283 Ga. at 189 (2) (holding that the

11

plaintiffs failed to establish their nuisance claim against the City of Atlanta for the use of a drainage pipe when there was no evidence to show that the City had exercised dominion and control over the pipe).

Here, as stated above, the City admitted that it uses the pipe on Rouse's property to process storm water and sewage. As stated in Division 1, a fact issue remains as to whether the City owned, constructed, maintained, or installed the sewage pipe and whether the City took any affirmative steps to repair or restore the pipe. Because fact issues remain as to whether the City ever exercised dominion and control over the pipe, we cannot hold that the City is liable for nuisance as a matter of law. See *Merlino*, supra, 283 Ga. at 189 (2) (holding that the plaintiffs failed to establish their nuisance claim against the City of Atlanta for the use and operation of a drainage pipe when there was no evidence to show that the City had exercised dominion and control over the pipe). Accordingly, we affirm the trial court's order denying Rouse summary judgment on his nuisance claim.

### *(c) Inverse Condemnation*

"An inverse condemnation claim arises when the governmental entity creates a condition on private property that amounts to a taking without compensation." (Citation and punctuation omitted.) *Solid Equities, Inc. v. City of Atlanta*, 308 Ga.

App. 895, 897 (2) (710 SE2d 165) (2011). "To state a claim for inverse condemnation, the property owner does not have to show a physical invasion that damages the property, but only an unlawful interference with the owner's right to enjoy the land." (Citation omitted.) *City of Tybee Island v. Live Oak Group, LLC*, 324 Ga. App. 476, 478 (751 SE2d 123) (2013). An inverse condemnation claim is properly set forth where a municipality

> takes some affirmative action for public purposes causing a nuisance or trespass which, in turn, result[s] in the diminished utility and functionality of a private owner's land. The diminished functionality and utility, in turn, interfere[s] with the owner's use and enjoyment of the land. It is only then that a 'taking' for a public purpose occur[s] which support[s] a claim for inverse condemnation.

 (Citations and punctuation omitted.) Id. at 479. We have noted that an inverse condemnation claim "may be brought against [a] public body for diverting water, impairing access, causing mud and silt to flow onto property, and for damaging property by noise, odors, or pollution." (Citation omitted.) Id.

Here, as the City admits, it actively uses the sewer pipe on Rouse's property to process sewage and storm water. As stated in Division 1, however, a fact issue remains as to whether the property had been dedicated to the City for its use. Rouse,

13

therefore, has failed to show, as a matter of law, that the City is unlawfully interfering with his right to enjoy his land. Accordingly, the trial court properly denied summary judgment on Rouse's inverse condemnation claim.

*(c) Attorney Fees*

As to Rouse's claim for attorney fees, OCGA § 13-6-11

> authorizes an attorney fee award even when nominal damages are recovered. And every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees. Moreover, generally the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case.

(Citation omitted.) *Hayman v. Paulding County*, 349 Ga. App. 77, 83 (2) (825 SE2d 482) (2019). Thus, "[a]n award of attorney fees, costs, and punitive damages is derivative of a plaintiff's substantive claims." (Citation omitted.) *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012). Here, as shown above, genuine issues of fact remain on all of Rouse's substantive claims. Because fact issues remain on Rouse's substantive claims, he is not entitled to attorney fees under OCGA § 13-6-11 as a matter of law. See *Tyler v. Lincoln*, 272 Ga. 118, 121 (2) (572 SE2d 180) (2000) (holding that the plaintiff was not entitled to summary

14

judgment on his claim for attorney fees under OCGA § 13-6-11 because genuine issues of material fact existed on the plaintiff's substantive claims).

Accordingly, we reverse the trial court's order granting the City's motion for summary judgment, but we affirm the trial court's order denying Rouse's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Rickman and Reese, JJ., concur*.